**KLEIN THOMAS LEE & FRESARD**
Gregory P. Gilmer (SBN: 212067)
Email: greg.gilmer@kleinthomaslaw.com
Kristyn Wong (SBN: 346644)
Email: kristyn.wong@kleinthomaslaw.com
1920 Main Street, Suite 230
Irvine, CA 92614
Office: (949) 676-4570

Thomas L. Azar (*Admitted pro hac vice*)
Email: tom.azar@kleinthomaslaw.com
Sarah K. Molina (*Admitted pro hac vice*)
Email: sarah.molina@kleinthomaslaw.com
100 N. Broadway, Suite 1600
St. Louis, MO 63102
Office: (314) 888-2970

*Attorneys for Defendant FCA US LLC*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

QUINTIN TANNER, on behalf of himself and all others similarly situated,

Plaintiff,

vs.

FCA US LLC, a Delaware Limited Liability Company; and DOES 1-100, inclusive,

Defendants.

**CASE NO.: 2:26-CV-1475-WBS (CKDx)**

*Assigned to: Hon. William B. Shubb*
*Magistrate Judge: Carolyn K. Delaney*

**FCA US LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Date: August 31, 2026
Time: 1:30 p.m.
Courtroom: Courtroom 5, 14th Floor
Action Filed: March 2, 2026

/ / /

/ / /

/ / /

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 31, 2026 at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 5 of the above-captioned court, located at the Robert T. Matsui United States Courthouse, 501 I Street, Sacramento, CA 95814, 14th Floor, Defendant FCA US LLC will and hereby does move this Court for an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing Plaintiff's Class Complaint (ECF #1-1) for failure to state any legally cognizable claim.

This motion is based on this Notice of Motion, FCA US's Memorandum of Points and Authorities, and on such other and further matters as may be presented to the Court at or prior to the hearing.

DATED: May 13, 2026

KLEIN THOMAS LEE & FRESARD

By: */s/ Kristyn Wong*
Gregory P. Gilmer
Kristyn Wong
Thomas L. Azar (*Admitted pro hac vice*)
Sarah K. Molina (*Admitted pro hac vice*)

*Attorneys for Defendant FCA US LLC*

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ..... ii

I. INTRODUCTION ..... 1

II. FACTS ALLEGED ..... 1

III. ARGUMENT ..... 3

A. The CIPA Claim Fails (Count I). ..... 3

1. No Facts To Support Injury/Standing. ..... 4

2. CIPA Does Not Apply To Internet Browsing. ..... 5

3. No Claim For Devices That Capture "Contents." ..... 6

4. No Claim For "Tapping" Your Own Line. ..... 7

B. The ECPA Claim Fails (Count II). ..... 9

C. The CDAFA Claim Fails (Count III). ..... 10

D. The Invasion Of Privacy Claim Fails (Count IV). ..... 11

E. The UCL Claim Fails (Count V). ..... 13

IV. CONCLUSION ..... 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allison v. PHH Mortg.*,
No. 25-cv-05323-RFL, 2026 WL 899438 (N.D. Cal. Mar. 27, 2026) ........ 9

*Aviles v. Liveramp, Inc.*,
No. 24STCV19869, 2025 Cal. Super. LEXIS 776 (Cal. Super. Ct. Jan. 28, 2025) ........ 9

*Cammorata v. Sonifi Sols., Inc.*,
2026 Cal. Super. LEXIS 17831 (Cal. Super. Ct. Feb. 18, 2026) ........ 4, 5

*Columbia Pictures, Inc. v. Bunnell*,
245 F.R.D. 443 (C.D. Cal. 2007) ........ 7

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ........ 12

*Hazel v. Prudential Fin., Inc.*,
No. 22-cv-07465-CRB, 2023 WL 3933073 (N.D. Cal. Jun. 9, 2023) ........ 13

*Heiting v. HP Inc.*,
No. 24STCV29634, 2025 Cal. Super. LEXIS 60774 (Cal. Super. Ct. Aug. 1, 2025) ........ 8

*Hernandez v. Hillsides, Inc.*,
211 P.3d 1063 (Cal. 2009) ........ 12

*Hill v. Nat'l Collegiate Athletic Assn.*,
865 P.2d 633 (Cal. 1994) ........ 11

*Hubbard v. Google LLC*,
No. 19-cv-07016-SVK, 2024 LW 3302066 (N.D. Cal. July 1, 2024) ........ 11

*In re Doubleclick Inc. Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ........ 7

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 10, 12

*In re Google, Inc. Privacy Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ........ 12

*Jackson v. Loews Hotels, Inc.*,
No. ED-18-CV-827-DMG, 2019 WL 6721637 (C.D. Cal. July 24, 2019) ........ 13

*Jones v. Peloton Interactive, Inc.*,
720 F. Supp. 3d 940 (S.D. Cal. 2024) ........ 12

*Jones v. Tonal Systems, Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024) ........ 11

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-cv-01474-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025) ........ 7

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ........ 10

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) ........ 13

*Lakin v. Watkins Associated Indus.*,
6 Cal. 4th 644 (1993) ........ 6

*Licea v. Hickory Farms LLC*,
No. 23STCV26148, 2024 Cal. Super. LEXIS 66498 (Cal. Super. Ct. Mar. 13, 2024) ........ 9

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........ 12

*Mitchener v. CuriosityStream, Inc.*,
815 F. Supp. 3d 845 (N.D. Cal. 2025) ........ 4, 7

*Palacios v. Office Depot, LLC*,
No. 24STCV1197, 2024 Cal. Super. LEXIS 71799 (Cal. Super. Ct. Dec. 4, 2024) ........ 4, 11

*Pena v. GameStop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023) ........ 10

*People v. Hawkins*,
98 Cal. App. 4th 1428 (2002) ........ 10

*Price v. Headspace, Inc.*,
No. 24STCV19921, 2025 WL 1237977 (Cal. Super. Apr. 01, 2025) ........ 7

*Rodriguez v. Brushfire Records*,
No. 2:25-cv-09797-CAS-PDx, 2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) ........ 4

*Rodriguez v. Ink Am. Int'l Grp. LLC*,
No. 25STCV15350, 2025 Cal. Super. LEXIS 84257 (Cal. Super. Ct. Dec. 10, 2025) ........ 5

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) ........ 9

*Ruiz v. Gap, Inc.*,
540 F. Supp. 2d 1121 (N.D. Cal. 2008),
*aff'd*, 380 Fed. Appx. 689 (9th Cir. 2010) ........ 13

*Sanchez v. Cars.com Inc.*,
No. 24STCV13201, 2025 Cal. Super. LEXIS 710 (Cal. Super. Ct. Jan. 27, 2025) .................. 5

*Schallert v. Orkin LLC*,
No. 24STCV31244, 2025 Cal. Super. LEXIS 85120 (Cal. Super. Ct. Dec. 15, 2025) ............. 5

*Schallert v. Palo Alto Networks*,
No. 25STCV17109, 2026 Cal. Super. LEXIS 24039 (Cal. Super. Ct. Mar. 6, 2026) ............... 5

*Scharon v. Paramount Glob.*,
No. 25STCV10585, 2025 Cal. Super. LEXIS 60786 (Cal. Super. Ct. Oct. 3, 2025) ................ 5

*Sparshott v. Feld Entm't*,
311 F.3d 425 (D.C. Cir. 2002) .......................................................................................... 7

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........................................................................................................ 4

*Tsering v. Meta Platforms, Inc.*,
No. 25-cv-01611-RFL, 2026 WL 89320 (N.D. Cal. Jan. 12, 2026) ....................................... 10

*U.S. v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ........................................................................................... 8

*Warden v. Kahn*,
99 Cal. App. 3d 805 (1979) .............................................................................................. 9

**Statutes**

18 U.S.C. § 2510(4) ......................................................................................................... 10

18 U.S.C. § 3121(b)(3) ..................................................................................................... 7

Cal. Pen. Code § 638.50(b) ................................................................................................ 6

Cal. Pen. Code § 638.50(c) ................................................................................................ 6

Cal. Penal Code § 631(a) ................................................................................................... 9

Cal. Penal Code § 637.2 ..................................................................................................... 4

Cal. Penal Code § 638.51(a) ............................................................................................... 6

Cal. Penal Code § 638.51(b)(5) .......................................................................................... 7

Cal. Penal Code § 638.52 ................................................................................................... 6

Cal. Penal Code 638.53 ...................................................................................................... 6

California Computer Data Access and Fraud Act (“CDAFA”), Cal. Penal Code § 502 ...... 1, 3, 10

California Invasion of Privacy Act (“CIPA”), Cal. Penal Code § 630 *et seq.* ....................... *passim*

California Unfair Competition Law (“UCL”), Cal. Bus. & Prof. Code § 17200 *et seq.* ...... 1, 3, 13

Electronic Communications Privacy Act (“ECPA”), 18 U.S.C. § 2510 *et seq.* ..................... 1, 3, 9

U.S.C. § 2511 ........................................................................................................................ 9

**Other Authorities**

Mopar Website, www.mopar.com ................................................................................... 1

## I. INTRODUCTION

Plaintiff Quintin Tanner brings this putative nationwide class action based on his visit to Defendant FCA US LLC's website (www.mopar.com, herein "the Mopar website") in January 2026.[1] That website allows owners of Chrysler, Dodge, Jeep, Ram, and other FCA US vehicles to access their owner's manuals and warranties, schedule service, and shop for vehicle parts.[2]

Plaintiff asserts claims for violation of the Electronic Communications Privacy Act ("ECPA"), the California Invasion of Privacy Act ("CIPA"), the Computer Data Access and Fraud Act ("CDAFA"), and the Unfair Competition Law ("UCL"), as well as a claim that FCA US invaded his right to privacy under the California Constitution.[3] These claims are based on allegations FCA US used software "trackers" to collect his IP address and what he viewed while visiting the Mopar website, and then shared this information with third parties.[4] Since Plaintiff fails to allege the injury required for standing to bring his CIPA and UCL claims, and all his claims suffer various fatal deficiencies, the Complaint should be dismissed in its entirety.

## II. FACTS ALLEGED

Plaintiff resides in California and visited the Mopar website "in and around January 2026 while browsing car parts and pricing information." *See* Comp., ¶¶ 6 (p. 2), 99. He alleges that, after visiting the Mopar website, he "noticed" an increase in targeted advertising and text messages related to the car parts he searched. *Id.* at ¶ 103. But, Plaintiff pleads no facts tying this to his visit to the Mopar website rather than his "browsing" of other part websites – indeed, he does not allege he provided his telephone number (or any other identifying information) while visiting the Mopar site. *See*, *generally*, Comp.

Instead, Plaintiff's claims are based on allegations that "forensic testing" of the Mopar website, conducted by some unknown person at some unspecified date, shows that FCA US uses

---

[1]*See* Class Complaint ("Comp."), ECF # 1-1, ¶¶ 1 (p. 1), 99-102. Because the Complaint repeats the numbering of certain paragraphs, this brief notes the specific page of the cited allegation where necessary for clarity.

[2]*See id.* at ¶ 70; *see also* www.mopar.com.

[3]*See* Comp., ¶¶ 99-107; *see also id.* at ¶¶ 117-78.

[4]*See id.* at ¶¶ 1-3 (p. 1), 72, 100-02.

"trackers" developed by Meta, Google, Crazy Egg, Inc., ClientJS, Akamai, Inline, AppNexus, Microsoft, Pinterest, OpenX, PubMatic, Rubicon Project, and Amazon on the Mopar website, and then shares the information collected with third parties. *Id.* at ¶¶ 2 (p.1), 43-44, 93. Plaintiff further alleges the "trackers" can collect information about a website visitor's interests, preferences, and consumer behavior. *Id.* at ¶ 86. For the "trackers" to work on a website, the tracking software must be re-installed onto a browser for each website, meaning that they are not stored on the browser. *Id.* at ¶ 72.

According to Plaintiff, when he visited the Mopar website, at least one of the foregoing "trackers" was installed on his browser without his consent so that it could be used "within the context of that website." *See id.* at ¶¶ 72, 75, 100, 102. Plaintiff notes that the Mopar website has a "pop-up banner which allows website visitors to opt-out" from information collection/sharing, but he does not plead that he opted out or otherwise indicated he did not consent to the use of the "trackers." *See*, *generally*, Comp. He also does not allege any trackers/cookies remain if a website visitor clicks the opt-out button. *Id.*

Plaintiff's alleged invasion of privacy appears centered on the collection of his IP address while visiting the Mopar website. Specifically, he alleges:

(1) "An IP address is a unique identifier for a device" and the internet equivalent of a "digital postal address that allows devices to send and receive data." *Id.* at ¶¶ 21-22.

(2) A website must receive a visitor's IP address for the visitor to be able to access the website and the content on it. *Id.* at ¶¶ 23-26.

(3) A "device fingerprint" is another unique identifier, which contains "information about a user's hardware and software attributes, such as browser type, operating system, screen resolution, installed finds, and time zone and language setting." *Id.* at ¶¶ 15, 18.

(4) FCA US collects IP addresses through the "trackers" as well as through "device fingerprinting techniques and unique identifiers identified above." *Id.* at ¶ 93.

It is unclear from the Complaint whether the "unique identifier described above" is the visitor's

"device fingerprint" or the IP address. *See id.* at ¶¶ 18, 22. Plaintiff generally alleges the "trackers" on the Mopar website collected his "identifying information, as well as dozens of other data points that revealed [his] behavior and activity on the Website" and "communications and personally identifying and addressing information" – but he never indicates what information, "data points," or communications were collected other than his IP address. *Id.* at ¶¶ 125, 137, 167.

For his alleged injury, Plaintiff pleads his "peace of mind" was injured, but he does not plead any actual facts about any injury or harm, and just offers conclusory allegations. *See id.* at ¶ 170. For example, he pleads "Plaintiff and Class Members have suffered harm and injury, including but not limited to the invasion of their privacy rights, loss of their information and loss of money and costs incurred," without providing any facts about those losses or costs. *Id.* at ¶ 140. Similarly, he pleads that "[a]s a direct and proximate result of Defendant's unfair and unlawful practices and acts, Plaintiffs were injured and lost money or property, including but not limited to the loss of their legally protected interest in the privacy of their personal information, data, and communications," again without ever identifying or explaining what money/property was lost. *Id.* at ¶ 176.

Based on the foregoing allegations, Plaintiff asserts claims for: violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630 *et seq.* (Count I); violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510 *et seq.* (Count II); violation of the California Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502 (Count III); invasion of privacy (Count IV); and violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* (Count V). *See id.* at ¶¶ 117-78. Plaintiff seeks to assert the ECPA claim in Count II on behalf of a "Nationwide Class," and the remaining claims on behalf of a "California Subclass." *Id.*; *see also id.* at ¶ 108.

## III. <u>ARGUMENT</u>

### A. <u>The CIPA Claim Fails (Count I).</u>

Plaintiff's CIPA claim is premised on the notion the website's "trackers" constitute illegal "pen registers" that captured his "IP address" while visiting the site. *See* Comp., ¶¶ 124-25; *see also id.* at ¶¶ 117-29. While the complaint is inconsistent on this issue, there are some allegations

suggesting he is also attempting to assert a similar claim based on the notion the "trackers" are "trap and trace devices." *See, e.g.*, *id.* at p. 15 & ¶¶ 89, 123, 174(c), 175. The California Penal Code defines a "pen register" as a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). A "trap and trace device" is defined similarly, and also excludes devices that can collect "contents" of communications, but relates to devices aimed at incoming calls. *See id.* at § 638.50(c). Plaintiff's CIPA claim fails for multiple, independent reasons.

***1. No Facts To Support Injury/Standing.***

Plaintiff has plainly failed to plead facts supporting the injury required for either statutory or constitutional standing to bring such a claim. CIPA only allows for a private right of action where the plaintiff "has been injured by a violation of this chapter." Cal. Penal Code § 637.2. And, even where a statutory violation has been alleged, a concrete injury is still required for standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021).

All Plaintiff pleads here is that FCA US obtained his IP address when he visited the Mopar website – something he acknowledges is required for any website to work when a person navigates to it. *See* Comp., ¶¶ 23-26. But, allegations of merely obtaining an IP address are ***not*** sufficient to plead any statutory injury under CIPA. *See, e.g.*, *Palacios v. Office Depot, LLC*, No. 24STCV1197, 2024 Cal. Super. LEXIS 71799, at *8 (Cal. Super. Ct. Dec. 4, 2024) ("[T]here is no protected privacy interest in Plaintiff's IP address. Therefore, collecting that IP address cannot constitute an injury authorizing a suit under Penal Code section 637.2, subdivision (c)."); *see also Cammorata v. Sonifi Sols., Inc.*, 2026 Cal. Super. LEXIS 17831, at **4-5 (Cal. Super. Ct. Feb. 18, 2026) (holding information "like what type of browser [plaintiff] used to access the website" insufficient for any claim). Nor can such allegations show Article III standing. *See, e.g.*, *Rodriguez v. Brushfire Records*, No. 2:25-cv-09797-CAS-PDx, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025) (no standing where alleged injury was "[d]efendant's acquisition of plaintiff's IP address and other device identifiers from her visit to defendant's website"); *Mitchener v. CuriosityStream, Inc.*, 815 F. Supp. 3d 845, 850-51 (N.D. Cal. 2025) ("The mere 'collection of

basic contact information by … software[,] or where the plaintiffs merely visited the website[,] are not concrete harms.'" (alterations in original, quotation omitted)).

Here, Plaintiff just pleads that his IP address and basic information about his computer's hardware/software – such as "browser type, operating system, screen resolution," *etc.* – was collected when he visited the Mopar website. *See* Comp., ¶¶ 21-26; *see also id.* at ¶¶ 15, 18, 93. While he proffers conclusory averments about other "data" and "behavior and activity on the Website," he pleads no facts to support this, and never explains what information was collected or how it could be viewed as sufficiently sensitive to show any injury. *See, e.g.*, *id.* at ¶¶ 125, 137, 167. Thus, he fails to allege the injury required for standing.

### *2. CIPA Does Not Apply To Internet Browsing.*

Plaintiff's CIPA claim also fails because, as a growing number of California courts have held, that statute does not apply to internet browsing or communications. *See, e.g.*, *Schallert v. Palo Alto Networks*, No. 25STCV17109, 2026 Cal. Super. LEXIS 24039, at *5 (Cal. Super. Ct. Mar. 6, 2026) ("Because the court finds that the CIPA does not extend to website communications, the court finds that Plaintiff has not met their burden to state facts sufficient to constitute a cause of action"); *Cammorata*, 2026 Cal. Super. LEXIS 17831, at **3-4 ("The Legislature enacted this statute in 1967—the internet did not exist then … [and] the Court is not aware of any binding legal authority that extends the application of CIPA to the internet."); *Schallert v. Orkin LLC*, No. 24STCV31244, 2025 Cal. Super. LEXIS 85120, at **6-17 (Cal. Super. Ct. Dec. 15, 2025) (analyzing statutory framework and legislative history in detail, and concluding that neither supported applying CIPA to website communications); *Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 Cal. Super. LEXIS 710, at **5-9 (Cal. Super. Ct. Jan. 27, 2025) (rejecting extension of CIPA's pen register provision to internet communications based on the statute's "plain language and legislative intent"); *Scharon v. Paramount Glob.*, No. 25STCV10585, 2025 Cal. Super. LEXIS 60786, at **3-6 (Cal. Super. Ct. Oct. 3, 2025) (similar); *Rodriguez v. Ink Am. Int'l Grp. LLC*, No. 25STCV15350, 2025 Cal. Super. LEXIS 84257, at **6-13 (Cal. Super. Ct. Dec. 10, 2025) ("CIPA's structure and history indicate that its pen-register provisions were aimed at telephonic-style surveillance, not at the routine operation of commercial websites or analytical

software. As such, the statute cannot reasonably be read as broadly as Plaintiff attempts to read it.").

This interpretation is consistent with the statutory language that limits pen register and trap and trace violations to when a device is employed without either the user's consent or a court order "pursuant to Section § 638.52 or 638.53." *See* Cal. Penal Code § 638.51(a). The statute requires the court order to "specify … [t]he number and, if known, physical location of the ***telephone line*** to which the pen register or trap and trace device is to be attached." *Id.* at § 638.52(d)(3) (emphasis added); *see also* § 638.53(a)(1) (requiring compliance with § 638.52). But, obviously, this express statutory requirement would make no sense if pen registers and trap and trace devices encompassed things like internet browsing and websites.

The California Supreme Court instructs that when interpreting statutory provisions, "each sentence must be read not in isolation but in the light of the statutory scheme," so "[a]n interpretation that renders related provisions nugatory must be avoided." *Lakin v. Watkins Associated Indus.*, 6 Cal. 4th 644, 659 (1993). Thus, when interpreting the rules and requirements for pen registers and trap and trace devices in §§ 638.50(b) and (c), courts cannot ignore the clarifying language and additional requirements in § 638.51(a) and § 638.52(d)(3). The only way to read the statute in a way that gives meaning to each part is to understand that "pen register" and "trap and trace device" have the same meaning now that they have had for decades, and refer to devices applied to telephone lines – not the internet.

Thus, for this reason too, Plaintiff's CIPA claim should be dismissed.

***3. No Claim For Devices That Capture "Contents."***

Plaintiff's CIPA claim also fails because the statutory definitions of "pen register" and "trap and trace device" expressly ***exclude*** devices or processes able to record or decode "the contents of a communication." *See* Cal. Pen. Code § 638.50(b) (pen register); *id.* at § 638.50(c) (trap and trace device).

Here, Plaintiff asserts a violation of § 638.50(b) and perhaps § 638.50(c), but he explicitly pleads (albeit in a conclusory fashion) that the "trackers" he is suing over captured the "contents" of his communications with the Mopar website, such as his "browsing behavior," "page views,"

"product views," "content interaction," and other "substantive information about [his] interests, preferences, and potential consumer behavior." *See, e.g.*, Comp., ¶¶ 61, 83-86, *see also id.* at p. 14 ("Defendant's Conduct Constitutes an Unauthorized Interception of the Contents of Communications under CIPA").

In other words, simply comparing Plaintiff's allegations to the plain language of the statute he says was violated confirms that statute does not apply, and could not possibly be violated, here. *See, e.g.*, *Mitchener*, 815 F. Supp. 3d at 851-52 ("For purposes of § 638.51, 'trap and trace devices [and pen registers] by definition are tools which provide information about the 'who,' 'when,' and 'where' of communications—but not the 'what.'" (quoting *Price v. Headspace, Inc.*, No. 24STCV19921, 2025 WL 1237977, at *3 (Cal. Super. Apr. 01, 2025)); *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-cv-01474-NW, 2025 WL 1745726, *4 (N.D. Cal. June 24, 2025) (similar); *see also Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 450 (C.D. Cal. 2007) (no "pen register or trap and trace device" was implicated in court order since the order "requires the production of the contents of communications"). This also requires dismissal of Plaintiff's CIPA claim.

***4. No Claim For "Tapping" Your Own Line.***

While some other provisions of CIPA require consent be obtained from "all parties" to a communication, the permission required for any pen register or trap and trace device is different – the statute only requires "the consent of ***the user*** of that service." Cal. Penal Code § 638.51(b)(5) (emphasis added). This use of the singular "user" is no mistake. After all, if the consent of "all parties" was required before installing such a device, "it is hard to see how any caller ID system, even that used for emergency services, would be legal." *Sparshott v. Feld Entm't*, 311 F.3d 425, 432 (D.C. Cir. 2002) (interpreting identical language in 18 U.S.C. § 3121(b)(3) creating exception for pen register and trap and trace device prohibition "where the consent of the user of that service has been obtained"); *see also In re Doubleclick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 507-10 (S.D.N.Y. 2001) (finding website operators – not website visitors – are the "users" of advertising cookies placed on their websites, so a similar consent exception in the ECPA applied).

Plaintiff pleads FCA US is the user of the allegedly illegal "trackers" at issue, and that FCA

US "consented" to the use of those "trackers" on its website. *See, e.g.*, Comp., ¶¶ 1-2 (p. 1), 56, 73, 102 (repeated allegations that "Defendant uses" the "trackers"). Thus, he has not pleaded any violation, but rather consented-to conduct that cannot create liability under the pen register or trap and trace device statute. Indeed, as Plaintiff acknowledges, no website can even work unless it receives the visitor's IP address – otherwise, it would not know where to deliver the website's content so it can be viewed by the visitor. *See id.* at ¶¶ 23-26.

This is ***not*** a case where Plaintiff is alleging FCA US installed "trackers" that monitored his browsing activity on ***other*** websites – just that FCA US obtained information about what Plaintiff did on its ***own*** website. *See*, *generally*, Comp. Nothing in the CIPA prohibits this, and the consent provision in Cal. Penal Code § 638.51(b)(5) expressly precludes any possible violation from it. Indeed, California courts have recognized the absurdity of reading CIPA in the way Plaintiff proposes, effectively criminalizing all internet websites. As one court aptly explained:

> "Plaintiff makes no allegation … that Defendant's website puts any sort of wiretap or tracker on Plaintiff that allows Defendant to monitor who else contacts Plaintiff …. The statute prohibits receiving unauthorized information about incoming communications from ***other parties—not information that passes between plaintiff and defendant when plaintiff contacts the defendant.*** CIPA cannot reasonably be read as broadly as Plaintiff attempts to read it. Plaintiff's reading goes far afield from any concept of wiretapping. If CIPA broadly prohibits any process by which anyone identifies any 'originating number,' then every cell phone in the world—which identify the phone number of incoming calls—would be a prohibited trap and trace device. So would every website interaction that identifies electronic information about the user in a manner that allows the website to function."

*Heiting v. HP Inc.*, No. 24STCV29634, 2025 Cal. Super. LEXIS 60774, at *9 (Cal. Super. Ct. Aug. 1, 2025) (emphasis added); *see also U.S. v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) ("[E]-mail and Internet users have no expectation of privacy in the to/from addresses of their messages or the IP addresses of the websites they visit … IP addresses … are voluntarily turned

over in order to direct the third party's servers."); *Aviles v. Liveramp, Inc.*, No. 24STCV19869, 2025 Cal. Super. LEXIS 776, at *7 (Cal. Super. Ct. Jan. 28, 2025) ("Without alleging that Defendant installed software on ***Plaintiff's*** device or browser that collected incoming contact information to ***Plaintiff's*** device, Plaintiff has not alleged anything above and beyond how the internet normally works." (emphasis in original)); *Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 Cal. Super. LEXIS 66498, at **9-10 (Cal. Super. Ct. Mar. 13, 2024) (holding that similar allegations failed to plead a lack of consent, and further noting that "public policy strongly disputes Plaintiff's potential interpretation … as one rendering every single entity voluntarily visited by a potential plaintiff, thereby [obtaining] an IP address for purposes of connecting the website, as a violator").

Plaintiff does not appear to assert a claim under Cal. Penal Code § 631(a), but he does include a few conclusory references to that provision in the Complaint. *See* Comp., ¶¶ 121, 129. To the extent Plaintiff is seeking to assert such a claim, which applies "to eavesdropping by a third party," it plainly fails because that statute cannot be applied to any recording "by a participant." *See, e.g.*, *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979); *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 897-99 (1975). It would also fail because Plaintiff does not plead facts to show the simultaneous transmission of data, which is also required. *See, e.g.*, *Allison v. PHH Mortg.*, No. 25-cv-05323-RFL, 2026 WL 899438, at *10 (N.D. Cal. Mar. 27, 2026).

For these additional reasons, the CIPA claim should be dismissed.

**B. <u>The ECPA Claim Fails (Count II).</u>**

In Count II, Plaintiff asserts a claim under the ECPA based upon allegations FCA US "intercepted" his communications with the Mopar website "[w]hen Plaintiff … accessed Defendant's website." *See* Comp., ¶¶ 132, 137-38; *see also* 18 U.S.C. § 2511. This claim fails in two key respects.

***First***, the ECPA specifically excludes anyone who "is a party to the communication" from its reach, as well as where "one of the parties … has given prior consent." 18 U.S.C. § 2511(2)(d). Thus, allegations a defendant "intercepted" communications on its own website, as here, fail to state any claim under the ECPA and should be dismissed. *See, e.g.*, *Pena v. GameStop, Inc.*, 670

F. Supp. 3d 1112, 1118 (S.D. Cal. 2023) ("Plaintiff pleads that he and the putative class members visited Defendant's website … However, because Defendant was the party that was meant to, and did, receive Plaintiff's communications, under the party exception, any alleged interception of the communications is not actionable."); *see also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) (ECPA "contain[s] an exemption from liability for a person who is a 'party' to the communication, whether acting under color of law or not").

***Second***, the ECPA defines "intercept" as the "aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). For a communication to be considered "intercepted" under the statute, it "must be acquired during transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). But, here, Plaintiff does not allege that his communications were intercepted in real time. *See*, *generally*, Comp. Bare allegations of recording and later use/sharing do not plausibly show communications were "acquired in transit," so the claim fails. *See, e.g.*, *Pena*, 670 F. Supp. 3d at 1120-21.

### C. <u>The CDAFA Claim Fails (Count III).</u>

The CDAFA prohibits unauthorized access to computers, computer systems, and computer data. *See* Cal. Penal Code § 502. But, for every provision in the Penal Code, "there must exist a union, or joint operation of act and intent, or criminal negligence." *Id.* at § 20. A defendant can only violate § 502 if it "knowingly accesses and without permission" commits the act. *See id.* §§ 502(c)(1); 502(c)(2); 502(c)(4); 502(c)(6); and 502(c)(7). The term "knowingly" applies to ***each*** element of the alleged violation. *People v. Hawkins*, 98 Cal. App. 4th 1428, 1437 (2002), *as modified on denial of reh'g* (July 2, 2002). Thus, the phrase "knowingly and without permission" in § 502 "requires that [a defendant] be aware both that they are using data or accessing a computer ***and*** that they are doing so without permission." *Tsering v. Meta Platforms, Inc.*, No. 25-cv-01611-RFL, 2026 WL 89320, at *4 (N.D. Cal. Jan. 12, 2026). "Otherwise, CDAFA would apply to individuals who knowingly access a computer or use data under the reasonable but mistaken belief that they had permission." *Id.*

Here, Plaintiff pleads that FCA US used "trackers" without his consent, but he does not

allege that FCA US ***knew*** it did not have permission to use "trackers." *See, e.g.*, Comp., ¶¶ 4 (p. 1), 75, 80. Nor does he allege any facts that could plausibly support an inference FCA US had such knowledge. *See*, *generally*, Comp. For example, while Plaintiff identifies ways that individuals can inform FCA US that they do not consent to the placement of "trackers" – *e.g.* opting out of cookies and configuring their privacy choices – he does not plead that he himself took those (or any) steps to inform FCA US he did not consent to the use of the "trackers" on his browser. *See id.* at ¶¶ 76-77. Because Plaintiff does not allege facts to show FCA US knew it was acting without his consent, he has failed to plead the scienter required for any CDAFA violation, and Count III fails.

**D. <u>The Invasion Of Privacy Claim Fails (Count IV).</u>**

Plaintiff asserts a claim for invasion of privacy based on FCA US's alleged use of the "trackers" on the Mopar website and its sharing of his "identifying and addressing information" with third parties. *See* Comp., ¶¶ 168-69. Such a claim requires Plaintiff show (1) "a specific legally protected privacy interest," (2) "a reasonable expectation of privacy," and (3) an invasion "sufficiently serious in [its] nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill v. Nat'l Collegiate Athletic Assn.*, 865 P.2d 633, 654-55 (Cal. 1994). His allegations fail all three requirements.

***First***, Plaintiff has failed to plead facts supporting either a "legally protected privacy interest" or a "reasonable expectation of privacy" in the information at issue. Both depend on ***"the content"*** of the information shared, since there is no privacy interest or expectation "in electronic messages, in general." *Jones v. Tonal Systems, Inc.*, 751 F. Supp. 3d 1025, 1043 (S.D. Cal. 2024). Informational content "is private when well-established social norms recognize the need to maximize individual control over its dissemination and use to prevent unjustified embarrassment or indignity." *Hill*, 865 P.2d at 654. But, there is no privacy interest or expectation in things like IP addresses or computer system "fingerprint" information. *See, e.g.*, *Palacios*, 2024 Cal. Super. LEXIS 71799, at *8; *see also Hubbard v. Google LLC*, No. 19-cv-07016-SVK, 2024 LW 3302066, at *7 (N.D. Cal. July 1, 2024) ("Contemporary internet browsing involves the collection of users' data, including by tracking users across the internet, and a reasonable user should expect as

much."). And, the only other content even conceivably at issue would be the fact that Plaintiff visited an automobile information, service, and parts-ordering website, and what he looked at on this website. Nothing is alleged to suggest Plaintiff had, or expected, his visit to the site would be treated as a private or confidential matter. In fact, all he pleads about his privacy expectations is that the website had a "pop-up banner" allowing visitors to opt-out of data use and website cookies – something Plaintiff does not even allege he did or attempted to do. *See* Comp., ¶ 76.

***Second***, even if Plaintiff had pleaded an actual interest in, and reasonable expectation of, privacy in his visit to the website, he has plainly failed to plead the "highly offensive" or "egregious breach of social norms" required for an invasion of privacy claim. *See Hernandez v. Hillsides, Inc.*, 211 P.3d 1063, 1078 (Cal. 2009). Courts agree the collection of data by a website owner about visits ***to its own website***, or the disclosure of such data, is neither "highly offensive" nor "egregious." *See, e.g.*, *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 973-75, 988 (N.D. Cal. 2014) (collecting and sharing such information does not meet the "'high bar' for the requisite intrusion that is highly offensive to a reasonable person"); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1016-17, 1025 (N.D. Cal. 2012) (disclosure of user's unique numeric code, URLs of pages viewed and website activity to third parties, including data brokers, was not "highly offensive" or a "serious invasion" of a privacy interest); *see also Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940, 951 (S.D. Cal. 2024) (dismissing similar claim because "[t]he collection of users['] information concerning various fitness products and services shared on the chat does not rise to the level of 'an egregious breach of social norms'").

Rather, this requirement is only satisfied if something truly out of the ordinary is alleged, such as with internet trackers (entirely different than those alleged here) that continue to monitor and report users' browsing activities ***after*** they had left the defendant's website, or that collect then disclose sensitive health information. *See, e.g.*, *In re Facebook*, 956 F.3d at 598, 602 (finding allegations stated a claim where "Facebook continued to collect their data ***after they had logged off*** the social media platform" (emphasis added)); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1127 (S.D. Cal. 2023) (dismissing claims based on sharing of plaintiff's browsing activity on site, but allowing separate claims about the disclosure of private health information from

appointment scheduling page to proceed).

For these reasons, the invasion of privacy claim should be dismissed.

**E. The UCL Claim Fails (Count V).**

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. But, only "a person who has suffered injury in fact and has lost money or property as a result" has standing to bring a claim under this statute. *See id.* at § 17204. Accordingly, to state a UCL claim, the plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., ***economic injury***, and (2) show that that economic injury was the result of, i.e., ***caused by***, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011) (emphasis in original). The required economic injury is typically shown through factual allegations explaining how the plaintiff paid more or accepted less in some transaction, lost a property right, was "deprived of money or property," or was "required to enter into a transaction, costing money or property." *Id.* at 323.

Here, Plaintiff offers a rote allegation reciting the UCL's language, but pleads no actual facts to support any economic injury. *See* Comp., ¶ 176. Courts agree that the "'unauthorized release of personal information' does not qualify as lost money or property for purposes of determining standing under the UCL." *Jackson v. Loews Hotels, Inc.*, No. ED-18-CV-827-DMG, 2019 WL 6721637, at *4 (C.D. Cal. July 24, 2019); *see also In re Facebook Privacy Litig.*, 572 Fed. Appx. 494 (9th Cir. 2014) (affirming dismissal of UCL claim based on "dissemination of [plaintiffs'] personal information"); *Hazel v. Prudential Fin., Inc.*, No. 22-cv-07465-CRB, 2023 WL 3933073, at *6 (N.D. Cal. Jun. 9, 2023) ("But just because Plaintiffs' data is valuable in the abstract, and because ActiveProspect might have made money from it, does not mean that Plaintiffs have 'lost money or property" as a result."); *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127 (N.D. Cal. 2008), *aff'd*, 380 Fed. Appx. 689 (9th Cir. 2010) (allegation of "unauthorized release of personal information" failed to show economic injury required for UCL claim).

Accordingly, the UCL claim in Count V should be dismissed.

/ / /

## IV. CONCLUSION

For the reasons above, the Court should dismiss the Class Action Complaint with prejudice.

DATED: May 13, 2026

KLEIN THOMAS LEE & FRESARD

By: */s/ Kristyn Wong*
Gregory P. Gilmer
Kristyn Wong
Thomas L. Azar (*Admitted pro hac vice*)
Sarah K. Molina (*Admitted pro hac vice*)

*Attorneys for Defendant FCA US LLC*

**CERTIFICATE OF ELECTRONIC FILING**

I hereby certify that on **May 13, 2026,** a true and correct copy of the foregoing **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT FCA US LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** was filed with the Clerk using the CM/ECF system, which will provide notice to the following counsel of record:

Mark D. Potter (SBN 166317)
James M. Treglio (SBN 228077)
Isabel Rose Masanque (SBN 292676)
**POTTER HANDY LLP**
100 Pine St., Ste 1250
San Francisco, CA 94111

Attorneys for Plaintiff
QUINTIN TANNER

Tel: (415) 534-1911
Fax: (888) 422-5191
Email: classactions@potterhandy.com

Samie Long