**KLEIN THOMAS LEE & FRESARD**
Gregory P. Gilmer (SBN: 212067)
Email: greg.gilmer@kleinthomaslaw.com
Kristyn Wong (SBN: 346644)
Email: kristyn.wong@kleinthomaslaw.com
1920 Main Street, Suite 230
Irvine, CA 92614
Office: (949) 676-4570

Thomas L. Azar (*admitted pro hac vice*)
Email: tom.azar@kleinthomaslaw.com
Sarah K. Molina (*admitted pro hac vice*)
Email: sarah.molina@kleinthomaslaw.com
100 N. Broadway, Suite 1600
St. Louis, MO 63102
Office: (314) 888-2970

*Attorneys for Defendant FCA US LLC*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| QUINTIN TANNER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>FCA US LLC, a Delaware Limited Liability Company; and DOES 1-100, inclusive,<br><br>Defendants. | **CASE NO.: 2:26-CV-1475-WBS (CKDx)**<br><br>*Assigned to: Hon. William B. Shubb*<br>*Magistrate Judge: Carolyn K. Delaney*<br><br>**FCA US LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: September 14, 2026<br>Time: 1:30 p.m.<br>Courtroom: Courtroom 5, 14th Floor<br>Action Filed: March 2, 2026 |

/ / /

/ / /

/ / /

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 14, 2026 at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 5 of the above-captioned court, located at the Robert T. Matsui United States Courthouse, 501 I Street, Sacramento, CA 95814, 14th Floor, Defendant FCA US LLC will and hereby does move this Court for an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing Plaintiff's First Amended Class Complaint (ECF #16) for failure to state any legally cognizable claim.

This motion is based on this Notice of Motion, FCA US's Memorandum of Points and Authorities, and on such other and further matters as may be presented to the Court at or prior to the hearing.

DATED: June 16, 2026

KLEIN THOMAS LEE & FRESARD

By: */s/ Kristyn Wong*
Gregory P. Gilmer
Kristyn Wong
Thomas L. Azar (*admitted pro hac vice*)
Sarah K. Molina (*admitted pro hac vice*)

*Attorneys for Defendant FCA US LLC*

# TABLE OF CONTENTS

Page


TABLE OF AUTHORITIES ........ ii

I. INTRODUCTION ........ 1

II. FACTS ALLEGED ........ 1

III. LEGAL STANDARD ........ 4

IV. ARGUMENT ........ 5

A. The CIPA § 638.51 "Pen Register"/"Trap And Trace" Claim Fails (Count I). ........ 5

1. No Facts To Support Injury/Standing. ........ 5

2. CIPA Does Not Apply To Internet Browsing. ........ 6

3. No Claim For Devices That Capture "Contents." ........ 7

4. No Claim For "Tapping" Your Own Line. ........ 8

B. The CIPA § 631(a) "Wiretapping" Claim Fails (Also Count I). ........ 10

C. The ECPA Claim Fails (Count II). ........ 12

D. The CDAFA Claim Fails (Count III). ........ 13

E. The Invasion Of Privacy Claim Fails (Count IV). ........ 14

F. The UCL Claim Fails (Count V). ........ 16

IV. CONCLUSION ........ 17

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .... 4

*Aviles v. Liveramp, Inc.*,
No. 24STCV19869, 2025 Cal. Super. LEXIS 776 (Cal. Super. Ct. Jan. 28, 2025) .... 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .... 4

*Cammorata v. Sonifi Sols., Inc.*,
2026 Cal. Super. LEXIS 17831 (Cal. Super. Ct. Feb. 18, 2026) .... 5, 6

*Columbia Pictures, Inc. v. Bunnell*,
245 F.R.D. 443 (C.D. Cal. 2007) .... 8

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .... 16

*Hazel v. Prudential Fin., Inc.*,
No. 22-cv-07465-CRB, 2023 WL 3933073 (N.D. Cal. Jun. 9, 2023 .... 16

*Heiting v. HP Inc.*,
No. 24STCV29634, 2025 Cal. Super. LEXIS 60774 (Cal. Super. Ct. Aug. 1, 2025) .... 9

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .... 15

*Hill v. Nat'l Collegiate Athletic Assn.*,
865 P.2d 633 (Cal. 1994) .... 14

*Hubbard v. Google LLC*,
No. 19-cv-07016-SVK, 2024 WL 3302066 (N.D. Cal. July 1, 2024) .... 15

*In re Doubleclick Inc. Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) .... 8

*In re Facebook Privacy Litig.*,
572 Fed. Appx. 494 (9th Cir. 2014) .... 16

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .... 11, 12, 15

*In re Google, Inc. Privacy Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ........ 15

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 11

*Jackson v. Loews Hotels, Inc.*,
No. ED-18-CV-827-DMG, 2019 WL 6721637 (C.D. Cal. July 24, 2019) ........ 16

*Jones v. Peloton Interactive, Inc.*,
720 F. Supp. 3d 940 (S.D. Cal. 2024) ........ 15

*Jones v. Tonal Systems, Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024) ........ 14

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-cv-01474-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025) ........ 8

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ........ 13

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) ........ 16

*Lakin v. Watkins Associated Indus.*,
6 Cal. 4th 644 (1993) ........ 7

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) ........ 12

*Licea v. Hickory Farms LLC*,
No. 23STCV26148, 2024 Cal. Super. LEXIS 66498 (Cal. Super. Ct. Mar. 13, 2024) ........ 10

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........ 15

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........ 4

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) ........ 11

*Mitchener v. CuriosityStream, Inc.*,
815 F. Supp. 3d 845 (N.D. Cal. 2025) ........ 6, 8

*Palacios v. Office Depot, LLC*, No. 24STCV1197,
2024 Cal. Super. LEXIS 71799 (Cal. Super. Ct. Dec. 4, 2024) ........ 5, 15

*Pena v. GameStop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023) ........ 12, 13

*People v. Hawkins*,
98 Cal. App. 4th 1428 (2002) ........ 13

*Price v. Headspace, Inc.*,
No. 24STCV19921, 2025 WL 1237977 (Cal. Super. Apr. 01, 2025) ........ 8

*Righthaven LLC v. Hoehn*,
716 F.3d 1166 (9th Cir. 2013) ........ 4

*Rodriguez v. Brushfire Records*, No. 2:25-cv-09797-CAS-PDx,
2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) ........ 6

*Rodriguez v. Ink Am. Int'l Grp. LLC*,
No. 25STCV15350, 2025 Cal. Super. LEXIS 84257 (Cal. Super. Ct. Dec. 10, 2025) ........ 7

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) ........ 11

*Rosenow v. Facebook, Inc.*,
No. 19-CV-1297-WQH-MDD, 2020 WL 1984062 (S.D. Cal. Apr. 27, 2020) ........ 13

*Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121 (N.D. Cal. 2008),
*aff'd*, 380 Fed. Appx. 689 (9th Cir. 2010) ........ 17

*Sanchez v. Cars.com Inc.*,
No. 24STCV13201, 2025 Cal. Super. LEXIS 710 (Cal. Super. Ct. Jan. 27, 2025) ........ 6

*Schallert v. Orkin LLC*,
No. 24STCV31244, 2025 Cal. Super. LEXIS 85120 (Cal. Super. Ct. Dec. 15, 2025) ........ 6

*Schallert v. Palo Alto Networks*,
No. 25STCV17109, 2026 Cal. Super. LEXIS 24039 (Cal. Super. Ct. Mar. 6, 2026) ........ 6

*Scharon v. Paramount Glob.*,
No. 25STCV10585, 2025 Cal. Super. LEXIS 60786 (Cal. Super. Ct. Oct. 3, 2025) ........ 7

*Sisti v. Bosley Inc.*,
– F. Supp. 3d – , 2026 WL 1223927 (C.D. Cal. Apr. 27, 2026) ........ 11

*Sparshott v. Feld Entm't*,
311 F.3d 425 (D.C. Cir. 2002) ........ 8

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 5

*Tsering v. Meta Platforms, Inc.*,
No. 25-cv-01611-RFL, 2026 WL 89320 (N.D. Cal. Jan. 12, 2026) ........ 14

*U.S. v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ........ 9

*Warden v. Kahn*,
99 Cal. App. 3d 805 (1979) ........ 11

**Statutes**

18 U.S.C. § 2510(4) ........ 13

18 U.S.C. § 2511 ........ 12

18 U.S.C. § 3121(b)(3) ........ 8

Cal. Bus. & Prof. Code § 17200 ........ 16

Cal. Pen. Code § 502 ........ 13

Cal. Pen. Code § 637.2(a) ........ 5

Cal. Pen. Code § 638.50(b) ........ 5, 7, 8

Cal. Pen. Code § 638.51(b)(5) ........ 8, 9

Cal. Penal Code § 631(a) ........ 10, 11

Cal. Penal Code § 638.50(c) ........ 5, 7, 8

Cal. Penal Code § 638.51 ........ 5, 8

CAl. Penal Code § 638.51(a) ........ 7

Cal. Penal Code § 638.52(d)(1), (3) ........ 7

Cal. Penal Code §§ 638.51(a) ........ 7

California Computer Data Access and Fraud Act ("CDAFA"), Cal. Pen. Code § 502 ........ 4, 14

California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code § 630 *et seq.* ........ 4, 6

California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* ........ 4, 16

Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510 *et seq.* ........ 4

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................................................ 4

## I. INTRODUCTION

Plaintiff Quintin Tanner brings this putative nationwide class action based on his visits to Defendant FCA US LLC's website (www.mopar.com, herein "the Mopar website") in and before March 2026.[1] That website allows owners of Chrysler, Dodge, Jeep, Ram, and other FCA US vehicles to schedule service, access vehicle information, and shop for vehicle parts.[2]

Plaintiff asserts claims for violation of the Electronic Communications Privacy Act ("ECPA"), the California Invasion of Privacy Act ("CIPA"), the Computer Data Access and Fraud Act ("CDAFA"), and the Unfair Competition Law ("UCL"), as well as a claim that FCA US invaded his right to privacy under the California Constitution.[3] These claims are based on allegations FCA US used software "trackers" to collect his IP address and what he did while visiting the Mopar website, and shared this information with third parties.[4] Since Plaintiff fails to allege the injury required for standing to bring his CIPA and UCL claims, and all his claims suffer various fatal deficiencies, the First Amended Class Complaint should be dismissed in its entirety.

## II. FACTS ALLEGED

Plaintiff resides in California and visited the Mopar website "multiple times during the twelve months preceding this action, including as recently as February and March 2026 … to research and compare prices for automotive parts" for his 2013 Chrysler 300C vehicle. *See* FAC, ¶¶ 6 (p. 2), 97. During his earlier visits, he searched for fuel pumps and identified compatible parts for his car. *Id.* at ¶ 99. In March 2026, as part of making a purchase on the Mopar website, Plaintiff provided his name, email address, physical address, telephone number, vehicle identification number (VIN) and payment information on the website. *Id.* at ¶ 100. He alleges that, after visiting the website, he received targeted advertisements about those same vehicle parts. *Id.* at ¶ 108. Plaintiff pleads no facts tying these advertisements to any software "trackers" on the website (as

---

[1] *See* First Amended Class Complaint ("FAC"), ECF # 16, ¶¶ 1 (p. 1), 97. Because the FAC repeats the numbering of certain paragraphs, this brief notes the specific page of the cited allegation where necessary for clarity.

[2] *See id.* at ¶ 67.

[3] *See* FAC, ¶¶ 97-123; *see also id.* at ¶¶ 122-86.

[4] *See id.* at ¶¶ 1-2 (p. 1), 69-70, 101-02, 107.

opposed to providing his contact information during his auto parts purchase), and does not say whether he saw these "targeted advertisements" online or if they came by email, mail, telephone, or another method. *Id.* He also does not identify whether these advertisements came from FCA US or another company. *Id.*

Plaintiff's claims are based on allegations that "forensic testing" of the Mopar website, conducted by some unknown person at some unspecified date, shows that FCA US uses "trackers" developed by Meta/Facebook, Google, Crazy Egg, Adobe, Microsoft, Dotomi, Xandr/AppNexus, Rocket Fuel/Rfihub, LiveIntent, Pinterest, DoubleClick, Treasure Data, Reddit, and Akamai, on the Mopar website, and shares the information collected with third parties. *Id.* at ¶¶ 2 (p. 1), 43-44, 101-02, 105. Plaintiff alleges the "trackers" can collect information about a website visitor's interests, preferences, and consumer behavior. *Id.* at ¶ 84. For the "trackers" to work on a website, the tracking software must be re-installed onto a browser for each website, meaning that they are not stored on the browser. *Id.* at ¶ 69.

Plaintiff notes that the Mopar website has a "pop-up or banner relating to cookies" that allows a visitor to "configure privacy settings," but says the "trackers" had acquired and already transmitted his "shopping behavior," IP address, "form inputs" and other information before he had the opportunity to decline cookies or tell FCA US he did not consent. *Id.* at ¶¶ 73-75, 161. He does not plead that he availed himself of these privacy options, opted out, or otherwise indicated he did not consent to the use of the "trackers" at any point. *See generally*, FAC.

According to Plaintiff, when he visited the Mopar website, at least one of the foregoing "trackers" was installed on his browser without his consent so that it could be used "within the context of that website." *See id.* at ¶¶ 2 (Page 1), 68-69, 72, 77, 132, 143. Plaintiff's alleged invasion of privacy appears centered on the collection of his IP address and his scrolling and shopping behavior while visiting the website. Specifically, he alleges:

(1) "An IP address is a unique identifier for a device" and the internet equivalent of a "digital postal address that allows devices to send and receive data." *Id.* at ¶¶ 21-22.

(2) A website must receive a visitor's IP address for the visitor to be able to access the

website and the content on it. *Id.* at ¶¶ 23-26.

(3) A "device fingerprint" is another unique identifier, which contains "information about a user's hardware and software attributes, such as browser type, operating system, screen resolution, installed fonts, and time zone and language setting." *Id.* at ¶¶ 15, 18.

(4) FCA US collects IP addresses through the "trackers" as well as through "device fingerprinting techniques and unique identifiers identified above." *Id.* at ¶ 91. It is unclear from the FAC whether the "unique identifier described above" is the visitor's "device fingerprint" or the IP address. *See id.* at ¶¶ 18, 22.

(5) The trackers "collected and transmitted behavioral, device, location, shopping-interest, and identifier data for analytics, advertising, audience-building, attribution, fraud-prevention, and commercial profiling purposes." *Id.* at ¶ 102.

(6) A "tracker" captured "form inputs and keystrokes, including information typed into search, fitment, cart, checkout, and other Website fields." *Id.* at ¶ 103.

(7) Trackers "intercepted" his "page content viewed, URLs visited, search and browsing activity, shopping behavior, product-interest and purchase-intent signals, mouse movements, clicks, scrolling behavior, form inputs, keystrokes, cart activity, checkout interactions, and communications [with FCA US] concerning vehicle fitment and automotive parts." *Id.* at ¶ 127.

For his alleged injury, Plaintiff pleads his "peace of mind" was injured, but he does not plead any actual facts about that injury or harm, and just offers conclusory allegations. *See id.* at ¶ 176. For example, he pleads "Plaintiff and Class Members have suffered harm and injury, including but not limited to the invasion of their privacy rights, loss of their information and loss of money and costs incurred," without providing any facts about those losses or costs. *Id.* at ¶ 146. Similarly, he pleads that "[a]s a direct and proximate result of Defendant's unfair and unlawful practices and acts, Plaintiffs were injured and lost money or property, including but not limited to the loss of their legally protected interest in the privacy of their personal information, data, and communications," again without ever identifying or explaining what money/property was lost. *Id.*

at ¶ 183. Plaintiff does allege, however, that if he had provided this information in a focus group, he would have received $50 to $200 for participating because participants in such focus groups regularly are paid $30-$500 per session. *Id.* at ¶¶ 64, 184.

Based on the foregoing allegations, Plaintiff asserts claims for: violation of the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code § 630 *et seq.* (Count I); violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510 *et seq.* (Count II); violation of the California Computer Data Access and Fraud Act ("CDAFA"), Cal. Pen. Code § 502 (Count III); invasion of privacy (Count IV); and violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* (Count V). *See id.* at ¶¶ 122-186. Plaintiff seeks to assert the ECPA claim in Count II on behalf of a "Nationwide Class," and the remaining claims on behalf of a "California Subclass." *Id.*; *see also id.* at ¶ 113.

## III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires a plaintiff "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief is context specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 663-64. While, on a motion to dismiss, the court "must take all of the factual allegations in the complaint as true, [it is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678.

"In the absence of standing, a federal court lacks subject matter jurisdiction over the suit." *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1172 (9th Cir. 2013) (quotations omitted). To have standing under Article III, a plaintiff must show an injury, trace that injury to the defendant's conduct, and prove that courts can provide adequate redress for the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). A plaintiff must show that he suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 560.

# IV. ARGUMENT

## A. The CIPA § 638.51 "Pen Register"/"Trap And Trace" Claim Fails (Count I).

Plaintiff asserts a CIPA claim under Cal. Penal Code § 638.51 based on the notion the Mopar website's "trackers" constitute illegal "pen registers" or "trap and trace devices." *See* FAC, ¶¶ 75, 77, 91, 122-135. The Code defines a "pen register" as a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Pen. Code § 638.50(b). A "trap and trace device" is similarly defined, and also excludes devices that can collect "contents" of communications, but relates to devices aimed at incoming calls. *See id.* at § 638.50(c). This claim fails for multiple, independent reasons.

### *1. No Facts To Support Injury/Standing.*

Plaintiff has plainly failed to plead facts supporting the injury required for either statutory or constitutional standing to bring such a claim. CIPA only allows for a private right of action where the plaintiff "has been injured by a violation of this chapter." Cal. Pen. Code § 637.2(a). And, even where a statutory violation has been alleged, a concrete injury is still required for standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021).

Plaintiff pleads that FCA US used a pen register/trap and trace device when the "trackers" obtained his IP address and similar "device information" during his visit to the Mopar website. FAC, ¶¶ 91, 130-131. But, Plaintiff himself acknowledges that providing an IP address is required for any website to work when a person navigates to it. *See* FAC, ¶¶ 21-26. And, allegations of obtaining this type of information are ***not*** sufficient to plead the injury required for any CIPA claim. *See, e.g.*, *Palacios v. Office Depot, LLC*, No. 24STCV1197, 2024 Cal. Super. LEXIS 71799, at *8 (Cal. Super. Ct. Dec. 4, 2024) ("[T]here is no protected privacy interest in Plaintiff's IP address. Therefore, collecting that IP address cannot constitute an injury authorizing a suit under Penal Code section 637.2 …"); *see also Cammorata v. Sonifi Sols., Inc.*, 2026 Cal. Super. LEXIS 17831, at **4-5 (Cal. Super. Ct. Feb. 18, 2026) (holding information "like what type of browser [plaintiff] used to access the website" insufficient for any claim). Nor can such allegations establish Article III standing. *See, e.g.*, *Rodriguez v. Brushfire Records*, No. 2:25-cv-09797-CAS-

PDx, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025) (no standing where alleged injury was "[d]efendant's acquisition of plaintiff's IP address and other device identifiers from her visit to defendant's website"); *Mitchener v. CuriosityStream, Inc.*, 815 F. Supp. 3d 845, 850-51 (N.D. Cal. 2025) ("The mere 'collection of basic contact information by … software[,] or where the plaintiffs merely visited the website[,] are not concrete harms.'" (alterations in original, quotation omitted)).

Plaintiff pleads nothing to show the information allegedly collected by any pen register or trap and trace device could possibly be viewed as sufficiently sensitive to show any injury. *See*, *generally*, FAC. To the contrary, he actually pleads he voluntarily provided FCA US with far more meaningful information (*i.e.*, "his name, email address, physical address, telephone number, VIN, and payment information") not through the "trackers" at issue, but when he ordered parts for his vehicle through the website. *Id.* at ¶ 100. Since Plaintiff has failed to plead facts plausibly showing any injury, his pen register/trap and trace device claim lacks both statutory standing and standing under Article III, and should therefore be dismissed.

***2. CIPA Does Not Apply To Internet Browsing.***

Plaintiff's pen register/trap and trace device claim also fails because, as a growing number of California courts have held, the CIPA does not apply to internet browsing or communications. *See, e.g.*, *Schallert v. Palo Alto Networks*, No. 25STCV17109, 2026 Cal. Super. LEXIS 24039, at *5 (Cal. Super. Ct. Mar. 6, 2026) ("Because the court finds that the CIPA does not extend to website communications, the court finds that Plaintiff has not met their burden to state facts sufficient to constitute a cause of action"); *Cammorata*, 2026 Cal. Super. LEXIS 17831, at **3-4 ("The Legislature enacted this statute in 1967—the internet did not exist then … [and] the Court is not aware of any binding legal authority that extends the application of CIPA to the internet."); *Schallert v. Orkin LLC*, No. 24STCV31244, 2025 Cal. Super. LEXIS 85120, at **6-17 (Cal. Super. Ct. Dec. 15, 2025) (analyzing statutory framework and legislative history in detail and concluding that neither supported applying CIPA to website communications); *Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 Cal. Super. LEXIS 710, at **5-9 (Cal. Super. Ct. Jan. 27, 2025) (rejecting extension of CIPA's pen register provision to internet communications based on the statute's "plain language and legislative intent"); *Scharon v. Paramount Glob.*, No. 25STCV10585, 2025

Cal. Super. LEXIS 60786, at **3-6 (Cal. Super. Ct. Oct. 3, 2025) (similar); *Rodriguez v. Ink Am. Int'l Grp. LLC*, No. 25STCV15350, 2025 Cal. Super. LEXIS 84257, at **6-13 (Cal. Super. Ct. Dec. 10, 2025) ("CIPA's structure and history indicate that its pen-register provisions were aimed at telephonic-style surveillance, not at the routine operation of commercial websites or analytical software. As such, the statute cannot reasonably be read as broadly as Plaintiff attempts to read it.").

This interpretation is consistent with the statutory language that limits pen register and trap and trace violations to when a device is employed without either the user's consent or a court order "pursuant to Section § 638.52." The statute requires the court order to specify the subscriber and location "of the ***telephone line*** to which the pen register or trap and trace device is to be attached." Cal. Penal Code § 638.52(d)(1), (3) (emphasis added); *see also* Cal. Penal Code §§ 638.51(a) (requiring court orders comply with § 638.52). But, obviously, this express statutory requirement would make no sense if pen registers and trap and trace devices encompassed things like internet browsing and websites.

The California Supreme Court instructs that when interpreting statutory provisions, "each sentence must be read not in isolation but in the light of the statutory scheme," so "[a]n interpretation that renders related provisions nugatory must be avoided." *Lakin v. Watkins Associated Indus.*, 6 Cal. 4th 644, 659 (1993). Thus, when interpreting the rules and requirements for pen registers and trap and trace devices in §§ 638.50(b) and (c), courts cannot ignore the clarifying language and additional requirements in § 638.51(a). The only way to read the statute in a way that gives meaning to each part is to understand that "pen register" and "trap and trace device" have the same meaning now that they have had for decades, and refer to devices applied to telephone lines – not the internet.

Thus, for this reason too, Plaintiff's CIPA claim should be dismissed.

***3. No Claim For Devices That Capture "Contents."***

Plaintiff's pen register/trap and trace device claim also fails because, under the statutory definitions of such devices, they expressly ***exclude*** devices or processes able to record or decode "the contents of a communication." *See* Cal. Pen. Code § 638.50(b) and (c).

Here, Plaintiff asserts violations of § 638.50(b) and § 638.50(c), but he explicitly pleads that the "trackers" he is suing over captured his "communications [with FCA US] concerning vehicle fitment and automotive parts" and his "interactions with the parts department and fitment functions" – *i.e.*, the contents of communications. FAC, ¶ 127. In other words, simply comparing Plaintiff's allegations to the plain language of the statute he says was violated confirms no "pen register" or "trap and trace device" is alleged, and that § 638.51 could not possibly be violated. *See, e.g.*, *Mitchener*, 815 F. Supp. 3d at 851-52 ("For purposes of § 638.51, 'trap and trace devices [and pen registers] by definition are tools which provide information about the 'who,' 'when,' and 'where' of communications—but not the 'what.'") (quoting *Price v. Headspace, Inc.*, No. 24STCV19921, 2025 WL 1237977, at *3 (Cal. Super. Apr. 01, 2025)); *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-cv-01474-NW, 2025 WL 1745726, *4 (N.D. Cal. June 24, 2025) (similar); *see also Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 450 (C.D. Cal. 2007) (no "pen register or trap and trace device" was implicated in court order since the order "requires the production of the contents of communications"). This also, independently, requires dismissal of Plaintiff's § 638.51 claim.

***4. No Claim For "Tapping" Your Own Line.***

While some other provisions of CIPA require consent be obtained from "all parties" to a communication, the permission required for any pen register or trap and trace device is different – the statute only requires "the consent of ***the user*** of that service." Cal. Pen. Code § 638.51(b)(5) (emphasis added). This use of the singular "user" is no mistake. After all, if the consent of "all parties" was required before installing such a device, "it is hard to see how any caller ID system, even that used for emergency services, would be legal." *Sparshott v. Feld Entm't*, 311 F.3d 425, 432 (D.C. Cir. 2002) (interpreting identical language in 18 U.S.C. § 3121(b)(3) creating exception for pen register and trap and trace device prohibition "where the consent of the user of that service has been obtained"); *see also In re Doubleclick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 507-10 (S.D.N.Y. 2001) (finding website operators – not website visitors – are the "users" of advertising cookies placed on their websites, so a similar consent exception in the ECPA applied).

Plaintiff pleads that FCA US is the user of the allegedly illegal "trackers" at issue, and that

FCA US uses those "trackers" on its own website. *See, e.g.*, FAC, ¶¶ 1-2, 4 (p. 1), 43, 54, 70, 78 (repeated allegations of Defendant "using" or "Defendant uses" the "trackers"). Thus, he has not pleaded any violation, but rather conduct falling within the one-party consent rule set forth in Cal. Pen. Code § 638.51(b)(5). Indeed, as Plaintiff acknowledges, no website can even work unless it receives the visitor's IP address – otherwise, it would not know where to deliver the website's content so it can be viewed by the visitor. *See id.* at ¶¶ 21-26.

This is ***not*** a case where Plaintiff is alleging FCA US installed "trackers" that monitored his browsing activity on ***other*** websites – just that FCA US obtained information about what Plaintiff did on its ***own*** website. *See*, *generally*, FAC. Nothing in the CIPA prohibits this, and the consent provision in Cal. Penal Code § 638.51(b)(5) expressly precludes any possible violation from it. Indeed, California courts have recognized the absurdity of reading CIPA in the way Plaintiff proposes, effectively criminalizing all internet websites. As one court aptly explained:

> "Plaintiff makes no allegation … that Defendant's website puts any sort of wiretap or tracker on Plaintiff that allows Defendant to monitor who else contacts Plaintiff …. The statute prohibits receiving unauthorized information about incoming communications from ***other parties—not information that passes between plaintiff and defendant when plaintiff contacts the defendant.*** CIPA cannot reasonably be read as broadly as Plaintiff attempts to read it. Plaintiff's reading goes far afield from any concept of wiretapping. If CIPA broadly prohibits any process by which anyone identifies any 'originating number,' then every cell phone in the world—which identify the phone number of incoming calls—would be a prohibited trap and trace device. So would every website interaction that identifies electronic information about the user in a manner that allows the website to function."

*Heiting v. HP Inc.*, No. 24STCV29634, 2025 Cal. Super. LEXIS 60774, at *9 (Cal. Super. Ct. Aug. 1, 2025) (emphasis added); *see also U.S. v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) ("[E]-mail and Internet users have no expectation of privacy in the to/from addresses of their messages or the IP addresses of the websites they visit … IP addresses … are voluntarily turned

over in order to direct the third party's servers."); *Aviles v. Liveramp, Inc.*, No. 24STCV19869, 2025 Cal. Super. LEXIS 776, at *7 (Cal. Super. Ct. Jan. 28, 2025) ("Without alleging that Defendant installed software on ***Plaintiff's*** device or browser that collected incoming contact information to ***Plaintiff's*** device, Plaintiff has not alleged anything above and beyond how the internet normally works." (emphasis in original)); *Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 Cal. Super. LEXIS 66498, at **9-10 (Cal. Super. Ct. Mar. 13, 2024) (holding that similar allegations failed to plead a lack of consent, and further noting that "public policy strongly disputes Plaintiff's potential interpretation … as one rendering every single entity voluntarily visited by a potential plaintiff, thereby [obtaining] an IP address for purposes of connecting the website, as a violator").

For these reasons, the CIPA § 638.51 claim should be dismissed.

**B. <u>The CIPA § 631(a) "Wiretapping" Claim Fails (Also Count I).</u>**

In the FAC, Plaintiff has added allegations that the Mopar website's "trackers" also violate the CIPA's "wiretapping" provision in Cal. Penal Code § 631(a). *See* FAC, ¶¶ 126, 135. This provision prohibits:

> "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section …"

Cal. Penal Code § 631(a). Plaintiff's wiretapping claim under § 631(a) fails for several reasons.

***First***, as explained above in § IV.A.1, only persons "injured by a violation of this chapter" have statutory standing to bring a CIPA claim. Thus, since Plaintiff has failed to plead any facts showing the required injury, he lacks both statutory and constitutional standing. *See*, *generally*, FAC.

***Second***, the CIPA's wiretapping provision only applies to "to eavesdropping by a third party," and it cannot be applied to any recording "by a participant." *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979); *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 897-99 (1975) (no violation where party to communication shared recording with a third party); *see also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) (finding § 631(a) "contain[s] an exemption from liability for a person who is a 'party' to the communication"). Obviously, as the owner and operator of the Mopar website, FCA US is a party to any interaction between Plaintiff and that website. Indeed, Plaintiff expressly pleads that the communications at issue were with FCA US. *See, e.g.*, FAC, ¶¶ 1 (p. 1), 127. Since FCA US cannot "wiretap" or illegally "intercept" communications that it is a party to, the § 631(a) claim fails.

***Third***, § 631(a) only applies to the contents of the communication. To support his § 631(a) claim, Plaintiff points to things allegedly captured like "URLs visited," "mouse movements," "clicks," "scrolling behavior," and "keystrokes" on the Mopar site before or during his completion of an order form for parts. *See* FAC, ¶ 127. Yet, "button clicks, mouse movements, scrolling, resizing, touches (for mobile browsers), key presses, page navigation" and the like "are more akin to the 'record' information that the Ninth Circuit has held not to be contents of a communication." *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024). Similarly, URLs visited and content viewed do not constitute the contents of the communication. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1109 (9th Cir. 2014). So, Plaintiff's claims based on "interception" of "page content viewed, URLs visited … mouse movements, clicks, scrolling behavior [and] keystrokes" are not cognizable under § 631(a).

***Fourth***, the wiretapping provision only applies where a defendant "reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is ***in transit***." Cal. Penal Code § 631(a) (emphasis added). And, courts agree conclusory allegations of "contemporaneous" or "realtime" transmittal fail to plausibly show the reading of a communication "in transit," or any violation. *See, e.g.*, *Sisti v. Bosley Inc.*, – F. Supp. 3d – , 2026 WL 1223927, at *6 (C.D. Cal. Apr. 27, 2026) ("Plaintiff argues that it is 'more than enough' that

he alleges that the Meta and TikTok Pixels 'contemporaneously' intercept the contents of Plaintiff's communications as they are transmitted to Defendants. However, '[t]he Court is not required to accept as true allegations in the complaint which are … merely conclusory' … Plaintiff has failed to provide any support for the illogical notion that Bosley could have disclosed Plaintiff's information to third parties while that information was still in transit from Plaintiff to Bosley."); *see also Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1109-10 (C.D. Cal. 2023) (similar). While Plaintiff alleges the "trackers" transmit collected data "in real time" (*see* FAC, ¶¶ 70, 73), such an allegation is conclusory when it "does not allege specific facts as to how or when the interception takes place, which has been found to fall short of stating a plausible claim under section 631(a)." *Licea*, 659 F. Supp. 3d at 1109-10.

For these reasons, the CIPA § 631(a) claim should be dismissed.

### C. <u>The ECPA Claim Fails (Count II).</u>

In Count II, Plaintiff asserts a claim under the ECPA based upon allegations FCA US "intercepted" his communications with the Mopar website "[w]hen Plaintiff … accessed Defendant's website." *See* FAC, ¶¶ 138, 143-45; *see also* 18 U.S.C. § 2511. This claim fails in two key respects.

***First***, like Cal. Penal Code § 631(a), the ECPA specifically excludes anyone who "is a party to the communication" from its reach, as well as where "one of the parties … has given prior consent." 18 U.S.C. § 2511(2)(d). Thus, allegations a defendant "intercepted" communications on its own website, as here, fail to state any claim under the ECPA and should be dismissed. *See, e.g.*, *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1118 (S.D. Cal. 2023) ("Plaintiff pleads that he and the putative class members visited Defendant's website … However, because Defendant was the party that was meant to, and did, receive Plaintiff's communications, under the party exception, any alleged interception of the communications is not actionable."); *see also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 607 (explaining that the ECPA "contain[s] an exemption from liability for a person who is a 'party' to the communication, whether acting under color of law or not").

***Second***, the ECPA defines "intercept" as the "aural or other acquisition of the contents of

any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). For a communication to be considered "intercepted" under the statute, it "must be acquired during transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). But, as discussed above, Plaintiff makes only the conclusory allegation that the trackers transmit data "in real time" and does not allege any facts as to how or when such interception takes place. FAC, ¶¶ 70, 73. The lack of actual, pleaded facts showing information was "acquired during transit" is fatal to the ECPA claim. *See, e.g.*, *Rosenow v. Facebook, Inc.*, No. 19-CV-1297-WQH-MDD, 2020 WL 1984062, at *7 (S.D. Cal. Apr. 27, 2020) (dismissing ECPA claim because allegation that "Yahoo knowingly used an algorithm to intercept and scan Plaintiff's incoming chat messages for content ***during transit***" was conclusory) (emphasis added)); *see also Pena*, 670 F. Supp. 3d at 1120-21. Here, Plaintiff does not state any facts to support an inference that the "trackers" intercepted his communications with FCA US while they were in transit, so the ECPA claim fails for this additional reason.

**D. <u>The CDAFA Claim Fails (Count III).</u>**

The CDAFA prohibits unauthorized access to computers, computer systems, and computer data. *See* Cal. Pen. Code § 502. Plaintiff asserts a CDAFA claim based on allegations FCA US "knowingly accessed and without permission altered and otherwise used Plaintiff's and Class Members' data, computers, computer systems … before any meaningful consent was obtained." *See* FAC, ¶ 161. This claim should be dismissed because Plaintiff fails to plead facts to show the required intent and scienter.

For every provision in the Penal Code, "there must exist a union, or joint operation of act and intent, or criminal negligence." *Id.* at § 20. A defendant can only violate § 502 if it "knowingly accesses and without permission" commits the act. *See id.* §§ 502(c)(1); 502(c)(2); 502(c)(4); 502(c)(6); and 502(c)(7). The term "knowingly" applies to ***each*** element of the alleged violation. *People v. Hawkins*, 98 Cal. App. 4th 1428, 1438-39 (2002), *as modified on denial of reh'g* (July 2, 2002). Thus, "knowingly and without permission" in § 502 "requires that [a defendant] be aware both that they are using data or accessing a computer ***and*** that they are doing so without permission." *Tsering v. Meta Platforms, Inc.*, No. 25-cv-01611-RFL, 2026 WL 89320, at *4 (N.D.

Cal. Jan. 12, 2026). "Otherwise, CDAFA would apply to individuals who knowingly access a computer or use data under the reasonable but mistaken belief that they had permission." *Id.*

Here, Plaintiff pleads that FCA US used "trackers" without his consent, but he does not allege facts to support a finding that FCA US ***knew*** it did not have permission to use "trackers." *See, e.g.*, FAC, ¶¶ 4 (p. 1), 72, 78. Nor does he allege any facts that could plausibly support an inference FCA US had such knowledge. *See*, *generally*, FAC. Instead, he pleads the opposite, namely that the trackers were deployed "before Plaintiff … could provide or withhold informed permission." FAC, ¶ 161. Because Plaintiff does not allege ***facts*** to show FCA US knew it was acting without his consent (and instead says the event occurred before he could inform FCA US that any access would be without permission), he has failed to plead the scienter required for any CDAFA violation, and Count III fails.

**E. <u>The Invasion Of Privacy Claim Fails (Count IV).</u>**

Plaintiff asserts a claim for invasion of privacy based on FCA US's alleged use of the "trackers" on the Mopar website and its sharing of his communications with FCA US and "identifying and addressing information" with third parties. *See* FAC, ¶¶ 174-75. Such a claim requires Plaintiff show (1) "a specific, legally protected privacy interest," (2) "a reasonable expectation of privacy," and (3) an invasion "sufficiently serious in [its] nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill v. Nat'l Collegiate Athletic Assn.*, 865 P.2d 633, 654-55 (Cal. 1994). His allegations fail all three requirements.

***First***, Plaintiff has failed to plead facts supporting either a "legally protected privacy interest" or a "reasonable expectation of privacy" in the information at issue. Both depend on ***"the content"*** of the information shared, since there is no privacy interest or expectation "in electronic messages, in general." *Jones v. Tonal Systems, Inc.*, 751 F. Supp. 3d 1025, 1043 (S.D. Cal. 2024). Informational content "is private when well-established social norms recognize the need to maximize individual control over its dissemination and use to prevent unjustified embarrassment or indignity." *Hill*, 865 P.2d at 654. But there is no privacy interest or expectation in things like IP addresses or computer system "fingerprint" information. *See, e.g.*, *Palacios*, 2024 Cal. Super.

LEXIS 71799, at *8; *see also Hubbard v. Google LLC*, No. 19-cv-07016-SVK, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) ("Contemporary internet browsing involves the collection of users' data, including by tracking users across the internet, <u>and a reasonable user should expect as much</u>." (emphasis in original)). Plaintiff says he had an expectation of privacy in his searches for shocks, springs, a fuel pump and other vehicle-specific parts, but he does not allege facts that suggest his visit to the automotive site would reasonably be treated as a private or confidential matter. *See, e.g.*, FAC, ¶ 173. Indeed, while he pleads the website had a "pop-up banner" allowing visitors to adjust their privacy preferences, he does not allege he did or ever attempted to do this during his "multiple" visits to the Mopar website. *See* FAC, ¶ 74-75.

***Second***, even if Plaintiff had pleaded a reasonable expectation of privacy in his visit to the website, he has plainly failed to plead the "highly offensive" or "egregious breach of social norms" required for an invasion of privacy claim. *See Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 295 (2009). Courts agree the collection of data by a website owner about visits ***to its own website***, or the disclosure of such data, is neither "highly offensive" nor "egregious." *See, e.g.*, *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 973-75, 988 (N.D. Cal. 2014) (collecting and sharing such information does not meet the "'high bar' for the requisite intrusion that is highly offensive to a reasonable person"); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1016-17, 1025 (N.D. Cal. 2012) (disclosure of user's unique numeric code, URLs of pages viewed and website activity to third parties, including data brokers, was not "highly offensive" or a "serious invasion" of a privacy interest); *see also Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940, 951 (S.D. Cal. 2024) (dismissing similar claim because "[t]he collection of users['] information concerning various fitness products and services shared on the chat does not rise to the level of 'an egregious breach of social norms'").

Rather, this requirement is only satisfied if something truly out of the ordinary is alleged, such as with internet trackers (entirely different than those alleged here) that continue to monitor and report users' browsing activities ***after*** they had left the defendant's website, or that collect then disclose sensitive health information. *See, e.g.*, *In re Facebook*, 956 F.3d at 598, 602 (finding allegations stated a claim where "Facebook continued to collect their data ***after they had logged***

***off*** the social media platform" (emphasis added)); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1127 (S.D. Cal. 2023) (dismissing claims based on sharing of plaintiff's browsing activity on site, but allowing separate claims about the disclosure of private health information from appointment scheduling page to proceed). Nothing like this is alleged here, and Plaintiff has failed to plead any facts implicating an actual breach of privacy. Thus, this claim fails.

**F. <u>The UCL Claim Fails (Count V).</u>**

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. But only "a person who has suffered injury in fact and has lost money or property as a result" has standing to bring a claim under this statute. *See id.* at § 17204. Accordingly, to state a UCL claim, the plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., ***economic injury***, and (2) show that that economic injury was the result of, i.e., ***caused by***, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011) (emphasis in original). The required economic injury is typically shown through factual allegations explaining how the plaintiff paid more or accepted less in some transaction, lost a property right, was "deprived of money or property," or was "required to enter into a transaction, costing money or property." *Id.* at 323.

Here, Plaintiff offers a rote allegation reciting the UCL's language, but pleads no actual facts to support any economic injury, only that if he had participated in a "focus group" he would have been paid $50 to $200. *See* FAC, ¶¶ 183-84. Courts agree that the "'unauthorized release of personal information' does not qualify as lost money or property for purposes of determining standing under the UCL." *Jackson v. Loews Hotels, Inc.*, No. ED-18-CV-827-DMG, 2019 WL 6721637, at *4 (C.D. Cal. July 24, 2019); *see also In re Facebook Privacy Litig.*, 572 Fed. Appx. 494 (9th Cir. 2014) (affirming dismissal of UCL claim based on "dissemination of [plaintiffs'] personal information"); *Hazel v. Prudential Fin., Inc.*, No. 22-cv-07465-CRB, 2023 WL 3933073, at *6 (N.D. Cal. Jun. 9, 2023 ("But just because Plaintiffs' data is valuable in the abstract, and because ActiveProspect might have made money from it, does not mean that Plaintiffs have 'lost money or property" as a result."); *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127 (N.D. Cal. 2008),

*aff'd*, 380 Fed. Appx. 689 (9th Cir. 2010) (allegation of "unauthorized release of personal information" failed to show economic injury required for UCL claim).

Accordingly, the UCL claim in Count V should be dismissed.

## IV. CONCLUSION

For the reasons above, the Court should dismiss the First Amended Class Complaint with prejudice.

DATED: June 16, 2026

KLEIN THOMAS LEE & FRESARD

By: */s/ Kristyn Wong*
Gregory P. Gilmer
Kristyn Wong
Thomas L. Azar (*Admitted pro hac vice*)
Sarah K. Molina (*Admitted pro hac vice*)

*Attorneys for Defendant FCA US LLC*

## CERTIFICATE OF ELECTRONIC FILING

I hereby certify that on **June 16, 2026,** a true and correct copy of the foregoing **FCA US LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** was filed with the Clerk using the CM/ECF system, which will provide notice to the following counsel of record:

Mark D. Potter (SBN 166317)
James M. Treglio (SBN 228077)
Isabel Rose Masanque (SBN 292676)
**POTTER HANDY LLP**
100 Pine St., Ste 1250
San Francisco, CA 94111

Attorneys for Plaintiff
QUINTIN TANNER

Tel: (415) 534-1911
Fax: (888) 422-5191
Email: classactions@potterhandy.com

Samie Long