**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)
mark@potterhandy.com
James M. Treglio (SBN 228077)
jimt@potterhandy.com
Isabel Rose Masanque (SBN 292673)
isabelm@potterhandy.com
100 Pine St., Ste 1250
San Francisco, CA 94111
Phone: (858) 375-7385
Fax: (888) 422-5191

Attorneys for Plaintiff, on behalf of himself and all others similarly situated

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| QUINTIN TANNER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>FCA US LLC, a Delaware Limited Liability Company, and DOES 1-100, inclusive,<br><br>Defendants. | Case No: 2:26-cv-01475-WBS-CKD<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**<br><br>Hearing Date: September 14, 2026<br>Hearing Time: 1:30 p.m.<br>Courtroom: 5 – 14th Floor<br><br>Hon. William B. Shubb |

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. LEGAL STANDARD ........ 1

III. THE FAC PLEADS PRE-CONSENT THIRD-PARTY TRACKING AND DATA ........ 2

IV. ARGUMENT ........ 3

- A. Plaintiff Pleads Article III Injury and CIPA Statutory Injury ........ 3
- B. The FAC States a CIPA Section 638.51 Pen-Register/Trap-and-Trace Claim ........ 4
- C. The FAC States a CIPA Section 631(a) Wiretapping Claim ........ 7
- D. The FAC States a Wiretap Act Claim ........ 10
- E. The FAC Plausibly Alleges Knowing Unauthorized Access Under CDAFA ........ 11
- F. Plaintiff States a California Constitutional Privacy Claim ........ 13
- G. The FAC Plausibly Alleges Unlawful, Unfair, and Profit-Driven Data Collection Under the UCL ........ 13
- H. Defendant Cannot Show Futility; Any Curable Deficiency Warrants Leave to Amend ........ 14

V. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Cases**

*Ambriz v. Google LLC*, No. 23-cv-05437-RFL, 2025 WL 830450, at *2-3 (N.D. Cal. Feb. 10, 2025) ..... 8

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ..... 2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) ..... 2

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856-59 (9th Cir. 2022) ..... 9

*Brown v. Google LLC*, 685 F. Supp. 3d 909, 932-39 (N.D. Cal. 2023) ..... 12

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996) ..... 2

*Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 450 (C.D. Cal. 2007) ..... 6

*Deteresa v. ABC*, 121 F.3d 460, 467 (9th Cir. 1997) ..... 11

*Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1072-77 (N.D. Cal. 2023) ..... 8, 9, 11

*Flanagan v. Flanagan*, 27 Cal. 4th 766, 775-76 (2002) ..... 5

*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050-51 (S.D. Cal. 2023) ..... 4

*Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287, 295 (2009) ..... 13

*Hill v. NCAA*, 7 Cal. 4th 1, 35-40 (1994) ..... 13

*In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 507-10 (S.D.N.Y. 2001) ..... 7

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598-601 (9th Cir. 2020) .... 3, 8, 13, 14

*In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795-99 (N.D. Cal. 2022) ..... 9

*In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014) ..... 4, 9

*James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 958 (N.D. Cal. 2023) ..... 4

*Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ..... 5, 9

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998-1003 (9th Cir. 2018) ..... 10

*Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) ..... 9

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322-25 (2011) ..... 14

*Matera v. Google Inc.*, 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016) ..... 5

*Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ..... 2

*Nelson v. Reddit, Inc.*, No. 25-CV-1470 JLS (AHG), 2026 WL 445627, at *3-7 (S.D. Cal. Feb. 17, 2026) ..... 5

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178-79 (9th Cir. 2014) ........ 9

*People v. Hawkins*, 98 Cal. App. 4th 1428, 1438-39 (2002) ........ 12

*Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985) ........ 8

*Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 928-31 (N.D. Cal. 2024) ........ 4

*Smith v. Rack Room Shoes, Inc.*, No. 24-cv-06709-RFL, 2025 WL 1085169, at *3-5 (N.D. Cal. Apr. 4, 2025) ........ 8

*Sparshott v. Feld Entm't*, 311 F.3d 425, 431-32 (D.C. Cir. 2002) ........ 7

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ........ 2

*Sussman v. ABC*, 186 F.3d 1200, 1202-03 (9th Cir. 1999) ........ 11

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 425-27 (2021) ........ 3

*Tsering v. Meta Platforms, Inc.*, 2026 WL 89320, at *4 (N.D. Cal. Jan. 12, 2026) ........ 12

*United States v. Forrester*, 512 F.3d 500 (9th Cir. 2008) ........ 6

**<u>Statutes</u>**

18 U.S.C. §§ 2510(4) ........ 10

Cal. Penal Code § 502(c)(1) ........ 12

Cal. Penal Code § 631(a) ........ 7

Cal. Penal Code § 637.2(a) ........ 3

Cal. Penal Code § 638.51(a) ........ 4

## I. INTRODUCTION

Defendant's motion mischaracterizes the allegations in the FAC. The FAC does not allege that Mopar.com merely received the ordinary information needed to load a page. It alleges that Defendant programmed Mopar.com to deploy advertising, analytics, session-recording, key-logging, fingerprinting, pixel, cookie, tag, and advertising-network code before a visitor could make any meaningful privacy choice. That code allegedly executed in Tanner's browser while he researched vehicle-specific parts for his 2013 Chrysler 300C, used fitment tools, and later entered VIN, contact, cart, and checkout information. It captured or transmitted page content viewed, URLs, searches, product-interest and purchase-intent signals, form inputs, keystrokes, identifiers, browser and device data, location or ZIP-code data, and checkout interactions, then disclosed or made that data available to outside advertising and analytics companies for profiling, retargeting, attribution, and revenue. FAC ¶¶ 1-4, 49-55, 72-77, 97-109, 127, 130-134, 161-164, 173-176.

Defendant's motion depends on reducing that case to a routine exchange of IP addresses on its own website. It then asks the Court to decide, without discovery, what the code did, when it fired, what it captured, what third parties received, whether those third parties acted only as Defendant's passive tools, whether Tanner consented before tracking began, whether the data included contents or only addressing signals, whether the trackers were pen registers, and whether the intrusion was serious enough. Rule 12(b)(6) does not permit Defendant to win disputed technical facts, consent issues, or competing inferences by relabeling the FAC.

The FAC is specific. It identifies the Website, the vendors, the technologies, the pre-consent timing, the categories of data and communications captured, Tanner's pre-purchase searches, his guest-checkout flow, the VIN and contact information he entered, and the targeted ads that followed. Those allegations state claims under CIPA sections 631(a) and 638.51, the Wiretap Act, the CDAFA, the California Constitution, and the UCL. The motion should be denied. At minimum, any dismissal should be with leave to amend.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss for failure to state a claim, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party; dismissal is

improper unless the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). A complaint attacked by a Rule 12(b)(6) motion need not contain detailed factual allegations or heightened fact pleading of specifics, but it must allege enough factual matter, taken as true, to raise the right to relief above the speculative level and state a claim to relief that is plausible on its face; the plausibility standard is not akin to a probability requirement, but requires more than a sheer possibility that a defendant acted unlawfully. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where Plaintiff's explanation is plausible, dismissal is improper even if Defendant offers another plausible explanation. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Thus, disputed issues of timing, consent, technical operation, third-party participation, and the meaning of captured data cannot be resolved on the pleadings. Plaintiff need only give fair notice of the claims and grounds; the evidentiary trail is for discovery. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

## III. THE FAC PLEADS PRE-CONSENT THIRD-PARTY TRACKING AND DATA

Mopar.com is alleged to be an online automotive platform with parts pages, search functions, fitment tools, cart functions, and guest-checkout flows. FAC ¶¶ 1, 67. The FAC alleges Defendant embedded third-party trackers from Meta/Facebook, Google/DoubleClick, Google Tag Manager, Crazy Egg, Akamai, ClientJS/Google APIs, AppNexus/Xandr, Microsoft Advertising, Pinterest, OpenX, PubMatic, Rubicon Project, Amazon Advertising, and related analytics, advertising, identity-syncing, and data-sharing partners. *Id.* ¶¶ 2, 43, 60, 73, 77, 101-107, 127, 163-164. Pre-consent testing detected hundreds of third-party trackers and cookies, twenty canvas-fingerprinting instances, a session recorder, Facebook Pixel events, and a key-logging instance on Mopar pages. *Id.* ¶¶ 44, 73, 101, 127, 174.

Plaintiff alleges he visited Mopar.com from California multiple times before his March 2026 purchase to research fuel pumps, suspension kits, engine suspension, shocks, and springs for his 2013 Chrysler 300C, and to use the Website's parts and fitment functions. FAC ¶¶ 6, 75, 97-100, 127, 164, 173. He later checked out as a guest and entered personal, contact, VIN, and checkout-related information. *Id.* ¶ 100. The FAC alleges the trackers loaded and began collecting

automatically with the first visit, before Plaintiff could review, configure, decline, or provide informed consent. *Id.* ¶¶ 72-75, 101, 109, 133, 161. It alleges third parties used the data for analytics, advertising, retargeting, audience-building, identity syncing, attribution, fraud prevention, and commercial profiling, and that Tanner later received targeted ads concerning the same parts he researched on Mopar.com. *Id.* ¶¶ 70-71, 102, 106-108, 163-164.

## IV. ARGUMENT

### A. Plaintiff Pleads Article III Injury and CIPA Statutory Injury

Defendant first attacks standing by pretending this case is only about an IP address. It is not. Tanner alleges unauthorized, pre-consent interception, recording, use, and disclosure of his communications and personal data during vehicle-parts research, fitment, form-entry, cart, checkout, VIN, contact, and checkout-related interactions. FAC ¶¶ 73, 97-108, 127, 130, 164, 173-176, 183-184. That is a concrete privacy injury, not a bare procedural violation.

The Ninth Circuit has held that unauthorized tracking and monetization of browsing histories can support Article III injury. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598-601 (9th Cir. 2020). *TransUnion* requires courts to ask whether the alleged intangible harm bears a close relationship to a harm traditionally recognized as actionable; it does not categorically exclude statutory privacy violations from constituting concrete injury, and it expressly identifies "disclosure of private information" and "intrusion upon seclusion" as intangible harms that can be concrete. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425-27 (2021). Secret interception, disclosure, and commercial use of private communications and identifying data bear that relationship. Tanner alleges loss of control, diminished privacy, disclosure of identifying and behavioral data, and targeted advertising tied to his Mopar research. FAC ¶¶ 108, 135, 146-147, 167, 175-176, 183-184. The targeted ads are corroborative of disclosure and retargeting; the concrete privacy injury exists independently in the alleged pre-consent interception, recording, and third-party disclosure itself.

CIPA injury is likewise pleaded. Section 637.2 authorizes suit by a person injured by a CIPA violation and permits statutory damages without proof of actual damages. Cal. Penal Code § 637.2(a), (c). Tanner alleges injury from violations of sections 631(a) and 638.51(a), including invasion of privacy, loss of information, loss of control, and statutory injury. FAC ¶¶ 135, 146-147,

175-176. Defendant's IP-only authorities do not address the pleaded architecture: pre-consent third-party tracking that captured substantive vehicle-parts communications, form and keystroke data, identifiers, VIN-related information, and behavioral signals.

**B. The FAC States a CIPA Section 638.51 Pen-Register/Trap-and-Trace Claim**

Section 638.51 prohibits installing or using a pen register or trap-and-trace device without a court order, subject to statutory exceptions. Cal. Penal Code § 638.51(a), (b). A pen register is a "device or process" that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not contents. *Id.* § 638.50(b). A trap-and-trace device similarly captures incoming source-identifying routing, addressing, or signaling information. *Id.* § 638.50(c).

The FAC tracks that language. It alleges Defendant caused cookies, pixels, JavaScript tags, session-recording tools, key-logging functions, canvas-fingerprinting scripts, advertising-network requests, and other third-party code to load on Tanner's browser and devices. FAC ¶¶ 101-107, 127, 130-132, 161-164. It alleges those processes recorded and disclosed IP addresses, ZIP or geolocation data, unique identifiers, advertising identifiers, cookie and session identifiers, device and browser information, user-agent data, request headers, referrers, and source- and destination-identifying signals. *Id.* ¶¶ 91, 102, 107, 130-132, 164. Courts have treated comparable tracking software as a "device or process" under section 638.50. *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050-51 (S.D. Cal. 2023); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 928-31 (N.D. Cal. 2024). Software can also constitute a device in analogous electronic-surveillance contexts. *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 958 (N.D. Cal. 2023). And IP addresses are addressing information. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014).

Defendant's categorical internet exemption contradicts the text. Section 638.50 expressly covers "electronic communication." It does not say "telephone only," and it does not exclude HTTP requests, browsers, websites, or software processes. Defendant relies on section 638.52's "telephone line" language, but that provision describes what a law-enforcement order must specify; it does not

narrow the operative definitions in section 638.50 or the substantive prohibition in section 638.51. Reading "telephone line" to create an internet exemption would render "electronic communication" and "process" surplusage. Section 638.51 also refers to providers of "electronic or wire communication service," which would have no work to do if the statute were confined to copper telephone lines. Cal. Penal Code § 638.51(b)(2).

CIPA is construed to protect privacy against new technologies. *Flanagan v. Flanagan*, 27 Cal. 4th 766, 775-76 (2002); *Matera v. Google Inc.*, 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016). The Ninth Circuit has recognized that section 631(a), though written in wiretapping terms, applies to internet communications. *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022). The same text-driven approach applies to section 638.51. Defendant's nonbinding trial-court decisions reflect, at most, one side of a developing split. They do not authorize dismissal where the FAC alleges browser-executed third-party tracking processes that recorded source, destination, identifier, device, header, referrer, and signaling data before consent.

Recent authority applying § 638.51 in the website-tracking context likewise rejects Defendant's argument that the statute is categorically inapplicable to internet communications. In *Nelson*, the court held that website tracking code that records addressing information transmitted through HTTP requests may qualify as a pen register and rejected the premise that website communications fall outside § 638.51 merely because users intentionally communicate with a website. *Nelson v. Reddit, Inc.*, No. 25-CV-1470 JLS (AHG), 2026 WL 445627, at *3-7 (S.D. Cal. Feb. 17, 2026). The same statutory theory is pleaded here: Defendant allegedly caused third-party trackers to record Plaintiff's IP address, geolocation or ZIP code data, unique identifiers, advertising identifiers, cookie and session identifiers, device and browser information, user-agent data, request headers, referrers, and source and destination-identifying signals before meaningful consent. FAC ¶¶ 91, 102, 107, 130-132, 164. Those allegations likewise plead injury because Defendant allegedly captured and disclosed Tanner's identifying information without authorization for profiling, retargeting, and other commercial uses, thereby invading the statutory privacy interests protected by § 638.51.

*Forrester* does not change that result. *United States v. Forrester*, 512 F.3d 500 (9th Cir. 2008), addressed Fourth Amendment expectations in internet addressing information during a criminal investigation. It did not construe CIPA section 638.51, did not involve a civil privacy statute enacted to provide broader protection, and did not involve a website operator's pre-consent deployment of third-party ad-tech, session-recording, key-logging, and fingerprinting tools on a consumer's browser. Defendant's reliance on Forrester collapses constitutional search doctrine into California statutory privacy law. The Court should not adopt a categorical internet exemption the Legislature did not write.

Nor does the contents exclusion defeat the claim. Plaintiff does not ask the Court to treat contents as DRAS data. The FAC pleads distinct theories: section 631(a) and the Wiretap Act address content-bearing searches, fitment communications, form inputs, keystrokes, cart and checkout interactions, and VIN-related entries; section 638.51 addresses separate non-content routing, addressing, signaling, source-identifying, destination-identifying, device, cookie, session, advertising, user-agent, header, and referrer data. FAC ¶¶ 127, 130-132. Whether a particular tracker recorded DRAS information, contents, or both is a technical factual question; it is not a pleading defect.

*Columbia Pictures* held that a discovery order compelling production of server log data did not violate the Pen Register Statute because the ordered data contained communication contents—specifically, requested file identities—and therefore the order did not require installation of a pen register or trap-and-trace device. See *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 450 (C.D. Cal. 2007). Defendant's more recent nonbinding authorities at most show that courts are testing the outer boundaries of section 638.51. This FAC stays within the statute by segregating DRAS data from content data and pleading both with technical detail.

Finally, Defendant cannot self-consent to using Tanner's browser and communications facilities as tracking tools. Section 638.51(b)(5) refers to consent of "the user of that service." Tanner alleges he and class members were the users of their browsers, devices, internet connections, and electronic-communication facilities. FAC ¶ 134. Defendant was not the user of Tanner's

browser, laptop, or internet connection. Nor can Defendant collapse independent ad-tech companies into itself at this stage. The FAC alleges third-party vendors received and used data for their own analytics, advertising, identity-resolution, cross-site profiling, retargeting, and commercial purposes. FAC ¶¶ 70-71, 77, 102, 106-107, 132, 134, 163-164. *Sparshott* and *DoubleClick* involved different federal contexts and do not decide this California statutory claim. *Sparshott* involved caller ID and federal pen-register language, not pre-consent third-party website tracking. See *Sparshott v. Feld Entm't*, 311 F.3d 425, 431-32 (D.C. Cir. 2002). *DoubleClick* was an early cookie decision under federal law that predates the modern advertising and fingerprinting stack alleged here and did not apply CIPA section 638.51. See *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 507-10 (S.D.N.Y. 2001). Neither permits a website operator to manufacture consent for the visitor's browser, device, and communications facility.

The point is narrow and practical. Plaintiff does not sue because Mopar.com received an IP address to return a webpage. He sues because Defendant allegedly embedded outside tracking code that executed in his browser before consent, synchronized identifiers, recorded DRAS information and substantive interactions, and transmitted or made that information available to advertising and analytics companies for their own uses. Treating Defendant's unilateral deployment decision as Plaintiff's consent would erase the statutory phrase "user of that service" and convert every hidden third-party tracker into a self-authorized surveillance device.

### C. The FAC States a CIPA Section 631(a) Wiretapping Claim

Section 631(a) bars a person, by machine, instrument, contrivance, or any other manner, from willfully and without consent of all parties reading or attempting to learn the contents or meaning of a communication while it is in transit or being sent or received, and from using information so obtained or aiding, agreeing with, employing, or conspiring with others to do so. Cal. Penal Code § 631(a). Defendant invokes the participant exception as if the only alleged actor were Mopar.com receiving its own communications. The FAC alleges more: Defendant embedded third-party trackers that operated in real time, acquired Tanner's communications and interaction data,

and transmitted or made that data available to outside companies for their own commercial purposes. FAC ¶¶ 65-73, 77, 101-107, 127, 132-134.

CIPA targets secret third-party access. *Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985). A participant may listen to its own conversation; it may not secretly introduce an outside eavesdropper and then call the eavesdropper itself. *In re Facebook* confirms that CIPA and the Wiretap Act contain party exceptions, but not a license for third-party tracking. *In re Facebook*, 956 F.3d at 607-08. The FAC alleges the third-party partners received and used data for independent advertising, analytics, profiling, and retargeting. FAC ¶¶ 70-71, 77, 102, 106-107, 134, 163-164. Whether those vendors were passive service providers, agents, true parties, or independent recipients depends on contracts, code, data flows, payloads, and vendor practices. Defendant has none of that evidence on this motion.

That pleading-stage result is consistent with other website-tracking cases. Courts applying CIPA and the Wiretap Act to website-tracking allegations have allowed claims to proceed where third-party tracking code receives user communications for the vendor's own advertising, analytics, profiling, retargeting, or other business purposes. *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076-78 (N.D. Cal. 2023); *Ambriz v. Google LLC*, No. 23-cv-05437-RFL, 2025 WL 830450, at *2-3 (N.D. Cal. Feb. 10, 2025); *Smith v. Rack Room Shoes, Inc.*, No. 24-cv-06709-RFL, 2025 WL 1085169, at *3-5 (N.D. Cal. Apr. 4, 2025). That is what the FAC alleges here: Defendant embedded third-party trackers that operated in real time, acquired Plaintiff's Mopar parts-searches, fitment and VIN interactions, form inputs, cart and checkout interactions, identifiers, and purchase-intent signals before meaningful consent, and transmitted or made that data available to advertising, analytics, identity-syncing, session-recording, and retargeting partners for their own commercial purposes. FAC ¶¶ 65-73, 77, 101-107, 127, 132-134, 163-164. Whether those vendors independently received and used Tanner's Mopar communications for advertising and retargeting is a factual issue that cannot be resolved on Rule 12.

The FAC also pleads contents. Defendant narrows the allegations to generic clicks and scrolls, but Tanner alleges searches for particular auto parts, fitment communications for a specific vehicle, page content viewed, URLs, product-interest and purchase-intent signals, form inputs,

keystrokes, cart and checkout activity, VIN and vehicle information, contact information, and checkout-flow information. FAC ¶¶ 99-100, 103-107, 127, 164, 173-174. Those allegations reveal the substance, purport, and meaning of Tanner's communications with Mopar.com. *In re Zynga Priv. Litig.* recognizes that ECPA "contents" means the intended message conveyed by a communication—information concerning its substance, purport, or meaning—and that, under some circumstances, search terms or similar user communications may constitute contents. *In re Zynga Priv. Litig.*, 750 F.3d at 1106-09. Courts have likewise recognized that website event data, button text, and full-string or descriptive URLs may constitute "content" when they reveal the substance, purpose, or meaning of a user's communication rather than merely addressing information. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795-96 (N.D. Cal. 2022); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1072-77 (N.D. Cal. 2023).

Tanner plausibly alleges in-transit interception. The FAC does not merely recite "real time." It alleges browser-executed JavaScript, pixels, session-recording scripts, key-logging events, canvas-fingerprinting scripts, advertising-network requests, duplicated browser transmissions, vendor requests, and contemporaneous network calls that fired as Tanner interacted with Mopar.com. FAC ¶¶ 12-19, 38-47, 60, 70, 73, 101-107, 127, 161-164. Session recording scripts allegedly captured event-by-event logs, cursor movements, clicks, scrolling, form inputs, and keystrokes. Key logging functionality allegedly captured keyboard input events as users typed in search, fitment, cart, checkout, and other Website fields. Pixels allegedly transmitted user action data to third-party servers. Those allegations plausibly describe acquisition during transmission, not later retrieval from storage. See *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002); *Javier*, 2022 WL 1744107, at *1-2.

Defendant's consent argument fails for the same factual reason. Tanner alleges the trackers loaded, executed, fingerprinted, recorded, and transmitted data before he could review, configure, decline, or provide informed consent. FAC ¶¶ 72-75, 101, 109, 133. Consent is not retroactive. *Javier*, 2022 WL 1744107, at *1-2. Online consent also requires reasonably conspicuous notice and unambiguous assent. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178-79 (9th Cir. 2014); *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856-59 (9th Cir. 2022). Defendant asks the

Court to infer consent from disputed timing, visibility, content, and technical effect of a pop-up and privacy controls. That is improper on Rule 12(b)(6). See *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998-1003 (9th Cir. 2018).

Defendant's contrary authorities are fact-bound. Cases dismissing thin session-replay or pixel complaints did not involve this combination of allegations: pre-consent deployment, specific third-party vendors, session recording, key-logging, canvas fingerprinting, advertising-network requests, duplicated browser transmissions, specific vehicle-parts searches, fitment and VIN interactions, and later targeted ads tied to the same parts. The Court must evaluate the complaint Tanner filed, not a stripped-down version in which only generic page navigation remains.

**D. The FAC States a Wiretap Act Claim**

The Wiretap Act prohibits intentional interception, disclosure, and use of the contents of electronic communications. 18 U.S.C. §§ 2510(4), 2510(8), 2511(1)(a), (c), (d). Tanner alleges all three. FAC ¶¶ 137-147. Defendant's one-party-consent defense cannot be resolved by assuming away the FAC. Section 2511(2)(d) protects an interceptor only where the interceptor is a party or one party has given prior consent, and only where the interception is not made for the purpose of committing a criminal or tortious act. The FAC alleges no prior, informed consent before tracking fired and alleges independent third-party acquisition and use. FAC ¶¶ 70-77, 101-109, 132-134, 143-147, 161-164.

*Pena* is distinguishable because that case involved a website operator's own receipt of communications. Tanner alleges Defendant caused independent third-party tracking code to execute in his browser, acquire content-bearing Website communications, and transmit or make that data available to advertising, analytics, identity-syncing, session-recording, and retargeting partners for their own commercial purposes. FAC ¶¶ 70-77, 101-109, 127, 132-134, 143-147, 161-164. Defendant cannot obtain dismissal by characterizing those third parties as itself. At minimum, whether the vendors were passive service providers, independent recipients, agents, or separate commercial users turns on code, payloads, contracts, and vendor use—facts unavailable on Rule 12.

The FAC also pleads the crime-tort exception. Even if Defendant were treated as a party, the Wiretap Act does not immunize interception made for the purpose of committing a criminal or tortious act. 18 U.S.C. § 2511(2)(d). The Ninth Circuit asks whether the defendant had a criminal or tortious purpose separate from the act of interception itself. *Sussman v. ABC*, 186 F.3d 1200, 1202-03 (9th Cir. 1999); *Deteresa v. ABC*, 121 F.3d 460, 467 (9th Cir. 1997). Tanner alleges interception not merely for website functionality, but for downstream profiling, retargeting, identity syncing, advertising, attribution, audience building, and revenue, while also pleading CIPA, CDAFA, constitutional privacy, and UCL violations. FAC ¶¶ 70-71, 102, 106-107, 143-147, 161-184. That is enough. *Doe*, 690 F. Supp. 3d at 1077-79.

Finally, the Wiretap Act in-transit argument fails for the same reason as the section 631(a) argument. "Intercept" means acquisition of contents through an electronic, mechanical, or other device. 18 U.S.C. § 2510(4). The FAC alleges event-level capture and real-time transmission from the user's browser to third-party endpoints while Tanner typed, searched, used fitment tools, browsed parts, and interacted with cart and checkout pages. FAC ¶¶ 12-19, 38-47, 70, 73, 101-107, 127, 143-147, 161-164. Whether discovery ultimately proves acquisition during transmission is for summary judgment or trial, not dismissal.

Nor may Defendant defeat the federal claim by slicing the tracking stack into isolated components. The Wiretap Act claim rests on the alleged system: pixels that report user actions, session scripts that record event-by-event interactions, key-logging functionality that captures typed fields, fingerprinting scripts that create persistent identifiers, and third-party network calls that transmit or make available the captured content and identifiers as the session unfolds. Those allegations plausibly plead acquisition, disclosure, and use of contents through electronic devices. Discovery can identify the payloads, endpoints, timing, vendor agreements, and purposes.

### E. The FAC Plausibly Alleges Knowing Unauthorized Access Under CDAFA

Defendant's CDAFA argument is narrow. It says Plaintiff fails to allege Defendant knew it acted without permission. The FAC alleges that knowledge directly and circumstantially. Defendant

allegedly programmed the Website to load and execute third-party code before meaningful consent; used privacy pop-ups, consent-management cookies, and tracking-consent mechanisms; knew user permission was required; and nevertheless configured the trackers to fire before users could provide or withhold informed permission. FAC ¶¶ 73-75, 101, 109, 133, 161. Those facts support a reasonable inference that Defendant knowingly accessed, used, altered, took, copied, or provided means of access to data and computer systems without permission. Cal. Penal Code § 502(c)(1), (2), (4), (6), (7).

*Tsering* is different. There, the court found insufficient facts showing the defendant knew it lacked permission. *Tsering v. Meta Platforms, Inc.*, 2026 WL 89320, at *4 (N.D. Cal. Jan. 12, 2026). Unlike *Tsering*, the FAC pleads the specific consent architecture—privacy pop-ups and consent-management cookies including OptanonConsent and dtm_consent—while alleging Defendant configured tracking to fire before that consent mechanism could operate. Here, the pleaded consent architecture is the scienter evidence. A company that deploys consent-management mechanisms, but configures tracking to fire before the consent interaction can occur, can plausibly be inferred to know permission is required and absent. Knowledge may be alleged generally and proven circumstantially. *People v. Hawkins*, 98 Cal. App. 4th 1428, 1438-39 (2002).

The FAC also pleads damage and loss. It alleges Defendant added or altered code, cookies, identifiers, scripts, pixels, and browser-resident data; caused third parties to communicate directly with Tanner's browsers and devices; took and made use of IP addresses, identifiers, fingerprinting data, URLs, searches, form inputs, keystrokes, vehicle and VIN data, checkout interactions, and personal information; and unjustly enriched itself through advertising, analytics, retargeting, audience-building, and commercial profiling. FAC ¶¶ 156-167. CDAFA does not require broken hardware or destroyed files. It reaches unauthorized access, use, taking, copying, alteration, and providing means of access to data and computer systems. Cal. Penal Code § 502(b), (c), (e). Analogous unauthorized data-collection claims have proceeded without physical damage. *Brown v. Google LLC*, 685 F. Supp. 3d 909, 932-39 (N.D. Cal. 2023).

**F. Plaintiff States a California Constitutional Privacy Claim**

Plaintiff states a California constitutional privacy claim by pleading a protected privacy interest, a reasonable expectation of privacy, and a serious invasion. *Hill v. NCAA*, 7 Cal. 4th 1, 35-40 (1994); *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287, 295 (2009). He alleges a protected informational privacy interest in personal information, identifiers, browsing and search activity, vehicle-specific fitment communications, VIN-related data, form inputs, keystrokes, cart and checkout activity, and contact information. FAC ¶¶ 100, 103-107, 127, 164, 172-175. Defendant's "no privacy interest in an IP address" refrain again answers only a fragment of the FAC.

Plaintiff's expectation of privacy is plausible. A reasonable consumer using an automotive-parts website to research compatible parts for a specific vehicle, enter VIN or fitment information, provide contact information, and complete a guest checkout would not expect pre-consent third-party session recording, key logging, persistent fingerprinting, pixels, cookies, tags, advertising-network requests, and identifier synchronization. FAC ¶¶ 73-77, 101-109, 173-174. The intrusion is plausibly serious: hidden, granular, identity-linked, pre-consent monitoring for profit, including form-input capture, keystrokes, VIN and vehicle data, checkout interactions, and retargeting ads tied to the same parts Tanner researched. FAC ¶¶ 103-108, 127, 164, 174-176. Offensiveness is normally contextual and fact-bound. *Hernandez*, 47 Cal. 4th at 287, 295; *In re Facebook*, 956 F.3d at 606.

**G. The FAC Plausibly Alleges Unlawful, Unfair, and Profit-Driven Data Collection Under the UCL**

The UCL claim survives under the unlawful prong because Tanner plausibly pleads predicate violations of CIPA, the Wiretap Act, the CDAFA, and the California Constitution. Cal. Bus. & Prof. Code § 17200; FAC ¶¶ 179-186. The unfair prong survives because the FAC alleges oppressive, undisclosed, pre-consent third-party tracking and monetization of personal, behavioral, vehicle, VIN, form-entry, checkout, and purchase-intent data before users could make a meaningful choice. FAC ¶¶ 73-77, 101-109, 127, 161-164, 173-184.

The FAC plausibly alleges UCL standing at this stage. It alleges economic injury because Defendant treated Tanner's personal information, data, and communications as its own property;

sold or otherwise used that data for profit; took the value of that information; and obtained revenue and unjust enrichment from unauthorized advertising, profiling, and retargeting. FAC ¶¶ 64, 166, 183-184. *Kwikset* requires loss or deprivation of money or property; it does not require a final restitution calculation at the pleading stage. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 327–28, 330 (2011). Defendant's cases involve abstract disclosure or data-breach theories, not a pleaded scheme to capture and monetize browsing, search, VIN, form-entry, cart, checkout, and identifier data.

*In re Facebook* confirms the practical premise behind Plaintiff's UCL theory: detailed browsing data can be economically valuable and monetized. *In re Facebook*, 956 F.3d at 599-601. Plaintiff does not contend that *In re Facebook* conclusively resolves UCL economic injury in every case, and he need not prove at the pleading stage the final dollar value of each data field or the precise restitution formula. He pleads that Defendant and its partners extracted commercially valuable information from him before consent and used it to support advertising, attribution, profiling, retargeting, and revenue. Those allegations provide enough injury and causal connection to proceed, or at least enough to amend with more detail if the Court requires a more particular restitution theory. At minimum, any UCL deficiency is curable and would not justify dismissal with prejudice or dismissal of the statutory privacy claims.

### H. Defendant Cannot Show Futility; Any Curable Deficiency Warrants Leave to Amend

Defendant seeks dismissal with prejudice, but it has not shown that amendment would be futile. Rule 15 embodies a strong policy favoring amendment, and leave should be freely given absent undue delay, bad faith, repeated failure to cure, undue prejudice, futility, or similar reasons. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003). In the Rule 12(b)(6) context, dismissal without leave is improper unless the court determines that additional facts consistent with the pleading could not possibly cure the deficiency. *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401–02 (9th Cir. 1986)

Any perceived defects here are curable. If the Court wants more detail, Plaintiff can amend to add facts regarding tracker names, firing sequence, network-call timing, payload fields, vendor-specific transmissions, consent-interface timing, privacy-notice placement, replay and keystroke functionality, browser-execution mechanics, transmission paths, the distinction between contents and DRAS data, Tanner's targeted advertisements, CDAFA loss, the UCL economic theory, and the manner in which Mopar.com transmitted or made data available to third-party vendors.

Defendant cannot show futility. The motion should be denied. If any portion is dismissed, Plaintiff should receive leave to amend.

## V. CONCLUSION

Defendant's motion depends on minimizing the FAC and resolving disputed technical facts in its favor. The FAC alleges a detailed, pre-consent, third-party tracking scheme on Mopar.com that captured and disclosed Plaintiff's automotive-parts research, fitment and VIN interactions, form entries, cart and checkout activity, identifiers, and personal data for commercial profiling and retargeting. Those well-pleaded allegations plausibly state claims under CIPA, the Wiretap Act, the CDAFA, the California Constitution, and the UCL. The Court should deny the motion. In the alternative, Plaintiff respectfully requests leave to amend.

Dated: June 30, 2026

**POTTER HANDY, LLP**

/s/ James M. Treglio
By: ______________________________
James M. Treglio
Isabel Rose Masanque
Attorneys for Plaintiff