UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| QUINTIN TANNER, on behalf of himself and all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>FCA US LLC, a Delaware Limited Liability Company; and DOES 1-100, inclusive<br><br>Defendants. | No. 2:26-cv-1475 WBS CKD<br><br>MEMORANDUM AND ORDER RE: DEFENDANT'S MOTION TO DISMISS |

----oo0oo----

Defendant FCA US LLC moves to dismiss plaintiff Quintin Tanner's putative class action against it for alleged violations of state and federal law in connection with defendant's use of third-party tracking software on its website. (Mot. to Dismiss ("Mot.") (Docket No. 18).) Defendant argues that plaintiff lacks standing and has failed to state a claim upon which relief can be granted. (Id.)

I. Plaintiff's Allegations

FCA's website, www.mopar.com, allows users to "browse and purchase vehicle parts and accessories, obtain pricing and fitment information, enter vehicle and VIN data, schedule services, manage vehicle-related needs, and access maintenance and customer-support resources for Chrysler, Dodge, Jeep, Ram, and other Stellantis vehicles." (First Am. Compl. ("FAC") at 13 (Docket No. 16).)

Over the course of a year, plaintiff browsed the website's pages for parts for his 2013 Chrysler 300C. (Id. at 19-20.) Plaintiff subsequently began to receive targeted advertisements for the same 2013 Chrysler 300C parts that he was researching. (Id. at 20.) When plaintiff later purchased a product from the website in March 2026, he provided "his name, email address, physical address, telephone number, VIN, and payment information." (Id.)

Plaintiff alleges that FCA caused third-party tracking software, or "trackers," to be installed on visitors' internet browsers.[1] (Id. at 1.) These trackers collect "visitors' identifying information, as well as dozens of other data points that reveal the users' behavior and activity on the Website, subjecting the user to unwanted and intrusive communications by would-be advertisers." (Id.) The trackers took multiple forms, including cookies, pixels, device fingerprinting, Internet Protocol ("IP") addresses, and session recordings. (Id. at 5-9.)

---

[1] Plaintiff alleges that FCA caused software developed and operated by Meta/Facebook, Google, Crazy Egg, Adobe, Microsoft, Dotomi, Xandr/AppNexus, Rocket Fuel/Rfihub, LiveIntent, Pinterest, DoubleClick, Treasure Data, Reddit, Akamai to be installed on his browser. (FAC at 9.)

Specifically, plaintiff alleges the use of the following tracking modalities on FCA's website:

- Session Recorders: FCA's "Crazy Egg" session recorder captured "a comprehensive, time-stamped log of every user interaction on a website," including scrolls, clicks, page navigation, and mouse movement. (FAC at 8.)
- Google Tracking Technology: FCA embedded Google trackers that "share detailed information about users including device and browser characteristics, page views, engagement metrics, conversion and ad-attribution data, and other user-behavior data." (FAC at 10.)
- Meta/Facebook Pixel Tracking Technology: FCA used Facebook scripts that "create a unique browser or device signature that can be associated with event data captured while the user interacts with the Website." (FAC at 11.)
- Advertising Networks: FCA made "browsing history, product-interest and purchase-intent signals, cookies or other unique identifiers, IP addresses, and device and browser characteristics" available to different advertisers. (FAC at 12.)
- Canvas Fingerprinting: FCA ran scripts and methods that created "highly unique and persistent browser or device identifier[s] that can track users across sessions and websites." (Id.)

In total, plaintiff alleges that on the homepage

there were "229 third-party trackers, 79 cookies, 20 canvas-fingerprinting instances, one session recorder, four Facebook Pixel events, and one key-logging instance, and, on the search-results page, 166 third-party trackers, 73 cookies, 20 canvas-fingerprinting instances, one session recorder, four Facebook Pixel events, and one key-logging instance." (FAC at 14.)

Plaintiff brings five claims against FCA: (I) violations of the California Invasion of Privacy Act ("CIPA"); (II) the federal Electronic Communications Privacy Act ("ECPA"); (III) the California Computer Data Access and Fraud Act ("CDAFA"); (IV) the California Constitution; and (V) the California Unfair Competition Law ("UCL"). (Id. at 26-40.)

II. Article III Standing

Each of plaintiff's claims turn on the same core allegation: FCA's installation and use of trackers on its website invaded plaintiff's privacy and resulted in the nonconsensual sharing of plaintiff's information to third parties. (FAC at 26-38.) FCA first disputes whether plaintiff has alleged a concrete privacy injury sufficient for Constitutional standing. (See Mot. at 13-14.)

This court's jurisdiction is limited to the resolution of "Cases" and "Controversies." TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021). The United States Constitution, Article III, Section 2, requires standing to bring a claim. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Accordingly, the court's duty to find Constitutional standing is categorical and independent of any perceived right to statutory standing. See Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016); U.S. Const.

art. 3, § 2, cl. 1; Dawidzik v. Tesla, Inc., No. 25-cv-1982 KK SPX, 2025 WL 3786963, at *3 (C.D. Cal. Dec. 29, 2025). To establish Article III standing, a plaintiff must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." TransUnion LLC, 594 U.S. at 423.

To assess concreteness for intangible injuries, such as the privacy injury alleged here, a court must determine whether "the asserted harm has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." (Id. at 414) (quoting Spokeo, Inc., 578 U. S. at 340). These harms include the common law torts of intrusion upon seclusion and public disclosure of private facts, both of which require "highly offensive interferences or disclosures." Popa v. Microsoft Corp., 153 F.4th 784, 792 (9th Cir. 2025).

The Ninth Circuit's recent decision in Popa is instructive in determining whether a plaintiff has sufficiently alleged a concrete privacy injury in internet tracking cases.[2] 153 F.4th at 791. There, the tracking of plaintiff's actions consisted of "browsing on a single pet supply site." Id. This tracking was not sufficiently "embarrassing, invasive, or otherwise private" to rise to the "'highly offensive' interferences or disclosures that were actionable at common law."

[2] This case is part of a "recent wave" of privacy litigation using both state and federal statutes to challenge third party tracking software used for advertising purposes. Magliocca v. United Healthcare Servs., Inc., No. 2:25-CV-3388 WBS SCR, 2026 WL 878694, at 2 (E.D. Cal. Mar. 31, 2026) (Shubb, J.) (collecting cases).

Id. Accordingly, courts must "examine the nature of the specific [collected] information at issue." Wooten v. BioLife Plasma Servs. L.P., 807 F. Supp. 3d 1139, 1143-44 (E.D. Cal. 2025) (Sheriff, J.) (citing I.C. v. Zynga, Inc., 600 F. Supp. 3d 1034, 1050 (N.D. Cal. 2022).

The Ninth Circuit has instructed that where information collection is like "a store clerk observing shoppers," there is no "embarrassing, invasive, or otherwise private information," and thus no concrete privacy injury. Popa, 153 F.4th at 791; see also Magliocca v. United Health Services, Inc., No. 2:25-CV-3388 WBS SCR, 2026 WL 2444750, at *3 (E.D. Cal. Aug. 19, 2026) (Shubb, J.) (holding that collecting information related to generic browsing for health insurance plans was insufficient for constitutional injury); Wooten, 807 F. Supp. 3d at 1144 (holding that collecting and sharing plaintiffs' IP and email addresses was insufficient).

On the other hand, courts have found concrete injury where "trackers go far beyond observing activity on a single website and instead compile what the Ninth Circuit has described as 'a cradle-to-the-grave profile' of sensitive, personally revealing information . . . over a significant period of time." Magliocca, 2026 WL 2444750, at *3 (quoting In re Facebook, Inc. Internet Tracking Litigation, 956 F.3d 589, 599 (9th Cir. 2020).

This court has recently disposed of a similar case alleging invasion of privacy using third party trackers. See Magliocca, 2026 WL 2444750, at *3. In Magliocca, the court found that the collection of data related to plaintiff's single visit to a healthcare site where she entered a ZIP code and generically

browsed for a healthcare plan was not enough to confer standing. (Id.) The court found there that this data -- which was almost entirely devoid of personal information tied to plaintiff -- could not colorably rise to the "embarrassing, invasive, or otherwise private" threshold set by Popa. (Id.) The present case, however, is different in kind.

Here, plaintiff claims that he visited the website on various occasions over the course of one year to browse for vehicle parts. (FAC at 16.) In March 2026, plaintiff made a purchase where he entered his name, "email address, physical address, telephone number, VIN, and payment information" as part of the checkout process. (Id.) Plaintiff alleges that trackers were active for all visits and collected his "IP address, geolocation or ZIP-code information, unique identifiers, browser and device information, page views, search and browsing activity, shopping behavior, product-interest and purchase-intent signals, and information associated with Plaintiff's vehicle, VIN, cart, and checkout interactions." (Id. at 22.)

Plaintiff has sufficiently alleged that FCA's actions harmed him in a manner that was substantially analogous to traditionally actionable "highly offensive" harms. Popa requires the court to consider the "particular circumstances" giving rise to the privacy injury when determining if the injury is "highly offensive," such as when they involve "sensitive medical or financial information." 153 F.4th at 791 (emphasis added). Plaintiff in this case plainly alleges more information collection than that involved in Popa, which narrowly turned on the use of session replay technology to collect information about

product browsing and mouse movement. (Id. at 786.)

The collection and transmission of plaintiff's personal information, particularly including VIN, home address, and payment-related financial information is not only more sensitive -- but poses potential economic and even physical danger to the plaintiff -- and is thus different in kind than the session and device-specific tracking at issue in Popa. Indeed, when taken together, the collection and transmission of plaintiff's VIN, home address, and credit card information create a unique, physical footprint, one that a third party could use to, among other things, commit a home or automobile intrusion or identity theft against the plaintiff. This is qualitatively different, and worse, than a privacy injury that is merely "embarrassing" to a user.

Courts in this circuit have found that sensitive information is concrete for Article III injury in various contexts. In Semien, the district court found that information amounting to "health status and treatment, travel plans, political affiliation, sexual orientation, and more" was sufficiently sensitive to find concrete injury. No. 25-CV-03164-SI, 2026 WL 216333, at *4 (N.D. Cal. Jan. 27, 2026). In Garcia v. Truist Fin. Corp., the district court similarly found information relating to "citizenship, housing, and employment statuses" to be sufficiently sensitive. 825 F. Supp. 3d 1149, 1161 (C.D. Cal. 2026). In Gabrielli v. Haleon US Inc., the court found that defendant's collection of plaintiffs "search queries, . . . name, age, gender, email address, location, and/or payment information, demographic information," among other data

categories was enough to establish injury-in-fact. 815 F. Supp. 3d 852, 867 (N.D. Cal. 2025).

Here, in line with the foregoing cases, the collection of a VIN number -- unique to plaintiff's vehicle -- as well as a physical home address and payment-related information goes further than "embarrassing, invasive, or otherwise private" information, as was found sufficient in Popa, 153 F.4th at 791. It also puts plaintiff's economic and physical safety at risk.

True, plaintiff has not shown the "cradle-to-grave" profiles developed by trackers in In re Facebook, where consumers were tracked across an immense number of websites with attendant "likes, dislikes, interests, and habits over a significant amount of time." 956 F.3d at 599. However, plaintiff has still demonstrated the collection of consumer interest over a period of at least one year, including sensitive data such as a VIN, home address, and checkout-related payment information. These allegations are sufficient at the pleading stage for Article III standing, especially given the collection and transmission of duly "embarrassing, private, or otherwise sensitive" information, as described above. Popa, 153 F.4th at 791.

With Constitutional standing established, the court now considers whether plaintiff has sufficiently alleged facts to proceed on each of the statutory bases for his suit.

III. Plaintiff's CIPA § 631(a) and ECPA Claims

Plaintiff argues violations of CIPA § 631(a) and ECPA, 18 U.S.C § 2511. Each statute allows suit for the unauthorized interception of the content of a user's communication to third parties. King v. Hard Rock Cafe Int'l (USA), Inc., No. 2:24-CV-

01119-DC-CKD, 2025 WL 1635419, at *3 (E.D. Cal. June 9, 2025) (Coggins, J.) (citing Hammerling v. Google LLC, 615 F. Supp. 3d 1069, 1092 (N.D. Cal. 2022).

To sue under CIPA § 631(a) and the ECPA, a plaintiff must allege "(1) an intentional act; (2) interception or eavesdropping; and (3) that the contents of a communication were intercepted or eavesdropped. Garcia v. Truist Fin. Corp., 825 F. Supp. 3d at 1166-67 (collecting cases); see 18 U.S.C. § 2511; Cal. Penal Code §§ 631(a), 632(a) (emphasis added). FCA makes various arguments that plaintiff has failed to state either a CIPA § 631(a) or ECPA claim.

A. "Contents" v. Record Information

FCA argues that "contents" were not collected under CIPA § 631(a) or the ECPA. Both statutes supply definitions for "contents" and "record" information; where the former is found to be collected, a claim lies, where the latter, it does not. See King 2025 WL 1635419, at *3-4 (E.D. Cal. June 9, 2025). "'Contents' mean 'the intended message conveyed by the communication' as opposed to 'record information regarding the characteristics of the message.'" (Id.)

To determine whether a defendant is collecting "contents" or "record" data, "[c]ourts employ a contextual 'case-specific' analysis hinging on 'how much information would be revealed' by the information's tracking and disclosure." Hammerling, 615 F. Supp. at 1092. Courts dismiss CIPA § 631(a) and ECPA claims when the data collected is comprised of "routine identifiers" such as "keystrokes, mouse clicks, pages viewed . . . duration of the visit, [and] Plaintiff's IP address." Yoon v.

Lululemon USA, Inc., 549 F. Supp. 3d 1073, 1083 (C.D. Cal. 2021).

Here, plaintiff has offered more than record information. Plaintiff has alleged the collection and transmission of search queries, session recordings, form inputs, specific page views, and sensitive checkout-related information tailored to plaintiff's make and model Chrysler over the course of a year. (FAC at 21.)

District courts have found the collection of search terms and URLs which "reveal . . .user's interests" to constitute "contents." Krzyzek v. OpenX Techs., Inc., 817 F. Supp. 3d 857, 866-67 (N.D. Cal. 2026); see R.C. v. Walgreen Co., 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024). In Mikulsky v. Bloomingdales, LLC, the Ninth Circuit found that session replay technology -- such as that alleged by plaintiff -- constituted "contents" because it allowed for the "real-time capture of the contents of. . .communications on Defendants' website without her consent, not merely the real-time capture of information regarding the characteristics of the communications." No. 24-3564, 2025 WL 1718225, at *1 (9th Cir. June 20, 2025).

The collection of plaintiff's payment-related information also raises unique concerns when assessing for "contents." In Briskin v. Shopify Inc., the district court reasoned that while one's name and email address are usually "record" information, credit card information in the context of a purchase is qualitatively different. No. 21-CV-06269-PJH, 2026 WL 161441, at *7 (N.D. Cal. Jan. 21, 2026). Specifically, the court found that "the 'contents' of an online purchase are essentially (1) the product information, and (2) the payment

information – if those aren't the 'contents,' then it's unclear what is." Briskin, 2026 WL 161441, at *7; see Hammerling, 615 F.Supp.3d at 1093 (finding that customer information "such as a person's name, address, and subscriber number or identity is record information, but it may be contents when it is part of the substance of the message conveyed to the recipient).

Because plaintiff's allegations include the collection and transmission of session recording, URLs, search-result pages, browsing activity, shopping cart and checkout-related activity, among various other data, he has sufficiently pleaded "contents" under the meaning of both ECPA and CIPA § 631(a).

B. "Interception" of Communications "in Transit"

FCA argues that plaintiff failed to show that the website "intercepted" any communication as plaintiff was voluntarily communicating directly with its website. (Mot. at 12.) However, on a motion to dismiss, the court, accepting allegations as true and drawing reasonable inferences in favor of the non-moving party, finds plausible plaintiff's contention that FCA intercepted its communications through the surreptitious use of third-party tracking modalities without his consent.

In Doe v. Tenet Healthcare Corp., the court similarly found "allegations that [defendant's website] simultaneously intercepted their data in real time using Meta Pixel" sufficient. 789 F. Supp. 3d 814, 838 (E.D. Cal. 2025) (Coggins, J.) (collecting cases); see also Walgreen Co., 733 F. Supp. 3d at 901-02 (finding intentional interception where "[d]efendant intentionally utilized tracking technologies to collect, use, and distribute [p]laintiffs' sensitive information to third parties")

(collecting cases). Despite FCA's contrary position at oral argument, it is not apparent to the court that FCA's deployment of multiple third party trackers on its website is not a colorable allegation of "interception." While plaintiff may have affirmatively shared his information with FCA itself; he did not consent to sharing said information with numerous third parties that were -- as a result of FCA's actions -- surreptitiously recording and transmitting his data.

FCA also argues that plaintiff failed to show that the contents of his communication were intercepted "in transit" as required under both CIPA § 631(a) and the ECPA. However, plaintiff has adequately alleged how specific, named tracking modalities collected his information in real-time transit, contemporaneous with FCA itself. (FAC at 70.) Like in Krzyzek, plaintiff has plausibly alleged that the trackers' "'interceptions' occurred while users communicated with websites through their browsing activities." 817 F. Supp. 3d at 868. Specifically, plaintiff contends that FCA deployed, *inter alia*, pixels, session-recording, key-logging, canvas-fingerprinting, among other modalities to contemporaneously collect his information. (Docket No. 19 at 9.) Such a showing is sufficient at the pleading stage to demonstrate interceptions of his "contents" while "in transit."

C. Party or Participant to Plaintiff's Communication

FCA further contends that plaintiff's CIPA § 631(a) and ECPA claims must fail because FCA was a "party" or "participant" to all communications with the website. In re Facebook, Inc. Internet Tracking Litig., 956 F.3d 589, 607 (9th Cir. 2020)

("Both statutes contain an exemption from liability for a person who is a 'party' to the communication"). "Courts perform the same analysis for both the [ECPA] and CIPA regarding the party exemption." Gaige v. Exer Holding Co., LLC, No. 2:24-CV-06099-AH-(AJRX), 2025 WL 559719, at *5 (C.D. Cal. Jan. 30, 2025) (quoting In re Facebook, Inc. Internet Tracking Litig., 956 F.3d at 607). There is an exception to this "party" or "participant" bar if the "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State" (the "crime tort exception"). 18 U.S.C. § 2511(2)(d).

Here, despite plaintiff's contrary arguments, FCA was plainly a party to plaintiff's communication with its own website. Accordingly, plaintiff must rely on the crime-tort exception to proceed. To assess whether the crime-tort exception applies, "the focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception—its intended use—was criminal or tortious." Sussman v. Am. Broad. Companies, Inc., 186 F.3d 1200, 1202 (9th Cir. 1999) (quoting Payne v. Norwest Corp., 911 F.Supp. 1299, 1304 (D.Mont.1995)), (emphasis added). Moreover, the "purpose must be separate and independent from the act of [interception]." Garcia, 825 F. Supp. 3d at 1166 (quoting Planned Parenthood Fed'n of Am., Inc. v. Newman, 51 F.4th 1125, 1136 (9th Cir. 2022)) (emphasis added).

Although there is a split among courts of this circuit on this issue, this court is persuaded by those decisions finding that a plausibly alleged tortious invasion of privacy is

sufficient on the pleadings to apply the crime-tort exception. See Garcia, 825 F. Supp. 3d at 1166; Gaige, 2025 WL 559719, at *5. For example, in Dellasala v. Samba TV, Inc., the court found the crime-tort exception properly pleaded where a party "had 'an independent prohibited purpose' beyond the act of interception itself,' such as to disclose the intercepted data to third parties, use it 'for advertising,' or compile comprehensive user files." No. 3:25-CV-03470-JSC, 2026 WL 1138358, at *10 (N.D. Cal. Apr. 21, 2026). Likewise, here, plaintiff contends that FCA's conduct violates CIPA and the California Constitution by disclosing information to third parties for various purposes, including "analytics, advertising, identity-resolution, cross-site profiling, retargeting, and commercial purposes." (FAC at 29); (see Docket No. 19 at 10.)

FCA's argument that the primary purpose of the alleged interceptions was financially motivated -- and not tortious -- is unavailing. (Docket No. 20 at 4-5.) "Even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law, including state law privacy claims." Dellasala, 2026 WL 1138358, at *10 (quoting Walgreen Co., 733 F. Supp. 3d at 901 (collecting cases)); see Krzyzek, 817 F. Supp. 3d at 867 (finding that "being primarily motivated by profit does not render the crime-tort exception inapplicable."). Here, where plaintiff has adequately alleged an invasion of privacy, the crime-tort exception is properly applied such that plaintiff's CIPA § 631(a) and ECPA claims survive FCA's motion to dismiss.

Because plaintiff has shown at the pleading stage that his "contents" were intentionally intercepted and shared in transit with multiple third parties, his CIPA & 631(a) and ECPA claims survive FCA's motion to dismiss.

V. Plaintiff's CIPA § 638.51(a) Claim

Plaintiff brings a separate claim under CIPA § 638.51(a), which prohibits "a person [from installing or using] a pen register ... without first obtaining a court order[.]" Krzyzek, 817 F. Supp. 3d at 866. As defined under CIPA, "[a] pen register is a 'device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication.'" Id., F. Supp. 3d at 869; see Cal. Penal Code. § 638.50(b).

Defendant argues, in part, that plaintiff's allegation that FCA-deployed trackers collected "contents," is incompatible with its claim under CIPA § 638.50(b). (Mot. at 7-8.) Plaintiff has plainly alleged that FCA's trackers involved the collection of "contents," including his VIN, home address, and credit card information. (FAC at 21.) It is not apparent to the court which of the various tracking modalities alleged by plaintiff resulted in the collection of solely DRAS data as countenanced by the CIPA §638.51(a) cause of action. The CIPA § 638.51(a) claim is accordingly dismissed with leave to amend for plaintiff to clarify his allegations as to the precise tracking at issue for his prima facie CIPA § 638.51(a) claim.

VI. Plaintiff's CDAFA Claim

Plaintiff also brings a claim under CDAFA, Cal. Penal Code § 502. CDAFA "prohibits certain computer-based conduct such as '[k]nowingly and without permission access[ing] or caus[ing] to be accessed any computer, computer system, or computer network.'" Torres v. Seatgeek, Inc., No. 25-CV-07118-LB, 2026 WL 1495202 (N.D. Cal. May 28, 2026); (quoting Perkins v. LinkedIn Corp., 53 F. Supp. 3d 1190, 1217 (N.D. Cal. 2014) (quoting Cal. Penal Code § 502(c)(7))). CDAFA only permits plaintiffs "who have 'suffer[ed] damage or loss by reason of a violation' of the statute [to] bring a civil action 'for compensatory damages and injunctive relief or other equitable relief.'" Doe v. Meta Platforms, Inc., 690 F. Supp. 3d 1064 (N.D. Cal. 2023) (quoting Cal. Penal Code § 502(e)(1)).

Plaintiff's claim under § 502 fails because he has not alleged a corresponding "damage or loss" under CDAFA. Cal. Penal Code § 502(e)(1); see Torres, 2026 WL 1495202, at*7. Plaintiff offers only conclusory allegations as to a "loss of money" because of the tracking and that he could obtain a dollar amount for providing information in focus groups. (FAC at 39.) Courts in this circuit diverge on whether "a theory of economic loss based on the misappropriation of personal data is sufficient to plead 'damage' or 'loss' under CDAFA." Tenet Healthcare Corp., 789 F. Supp. 3d at 845 (collecting cases).

This court finds persuasive the line of cases holding that the loss of data or the right to control one's data is not a "'damage or loss' within the meaning of the CDAFA." See e.g., Cottle v. Plaid Inc., 536 F. Supp. 3d 461 (N.D. Cal. 2021); Meta Platforms, Inc., 690 F. Supp. 3d at 1081-82; Dellasala, 2026 WL

1138358, at *8. Courts in this circuit have held that where just because a plaintiff's "data is valuable in the abstract, and because [defendant] might have made money from it, does not mean that [p]laintiffs have 'lost money or property' as a result." Dellasala, 2026 WL 1138358, at *10 (quoting Hazel v. Prudential Fin., Inc., No. 22-CV-07465 CRB, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023)). "Where, as here, 'plaintiffs allege that their privacy has been invaded because of the disclosure of sensitive. . .information—plaintiffs cannot base their CDAFA damages on a theory that they lost a benefit to sell that data themselves.'" Tenet Healthcare Corp., 789 F. Supp. 3d at 845 (quoting Doe v. Cnty. of Santa Clara, No. 23-CV-04411-WHO, 2024 WL 3346257, at *9 n.7 (N.D. Cal. July 8, 2024) (emphasis added). Accordingly, plaintiff's conclusory allegation that there may be a "focus group" market for his data is not sufficient.

Despite FCA's arguments, this case is also different than Brown v. Google LLC, as "the plaintiff there alleged a specific cash value. . .attached to. . . misappropriated data" and identified a Google-specific program that was paying users a fee of three dollars a day for their browsing history. Dellasala, 2026 WL 1138358, at *10 (discussing Brown v. Google LLC, No. 20-CV-03664-LHK, 2021 WL 6064009, at *15 (N.D. Cal. Dec. 22, 2021). Here, plaintiff's bare allegation that sharing "similar information" in a focus group would entitle him to $50.00 to $200.00 is insufficient. (FAC at 39.)

Plaintiff also alleges that FCA was "unjustly enriched by [collecting plaintiff's and class members' data]." (FAC at 35.) However, here too, plaintiff's allegation is insufficient

to find "damage or loss" under CDAFA. Cal. Penal Code § 502(e)(1). This case is not like Rodriguez v. Google LLC, which found that a "disgorgement of profits" theory allowed for "damages or loss" under CDAFA because plaintiff had adequately pleaded a "stake in the value of their data" by demonstrating a market for such data. 772 F. Supp. 3d 1093, 1110 (N.D. Cal. 2025). Here, plaintiff's cursory invocation of nondescript focus group value is not enough to demonstrate "a market" for the collected data's value. See id.; (FAC at 35.) Accordingly, plaintiff's CDAFA claim will be dismissed for failure to show the requisite "damage or loss." Cal. Penal Code § 502(e)(1).

V. Plaintiff's California Constitutional Claim

Plaintiffs finally bring a claim for invasion of privacy under the California Constitution. Cal. Const. art. I, § 1. "Plaintiffs must show that (1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion is 'so serious ... as to constitute an egregious breach of the social norms' such that the breach is 'highly offensive.'" Garcia v. Truist Fin. Corp., 825 F. Supp. 3d 1149, 1169 (C.D. Cal. 2026) (quoting In re Facebook, Inc. Internet Tracking Litig., 956 F.3d at 601.).

To determine whether a plaintiff has alleged a reasonable expectation of privacy, courts assess whether the "defendant gained 'unwanted access to data by electronic or other covert means, in violation of the law or social norms." In re Facebook, Inc. Internet Tracking Litig., 956 F.3d at 601-02 (quoting Hernandez v. Hillsides, Inc., 47 Cal.4th 272, 97 Cal.Rptr.3d 274, 211 P.3d 1063, 1073 (2009)). "To make this

determination, courts consider a variety of factors, including the customs, practices, and circumstances surrounding a defendant's particular activities." (Id. 956 F.3d at 602.) The question for the court is, accordingly, whether it is plausible that a user would "reasonably expect" FCA to both collect and share with third parties detailed personal information -- including a physical address, credit card information, and a VIN -- when purchasing a vehicle part as a guest on the website and without being provided an opportunity to consent to such collection before it occurred. (Id.) Given the sensitive -- and potentially dangerous -- nature of the information shared with numerous third parties, the court finds that plaintiff has adequately alleged a reasonable expectation of privacy. (See id.)

Plaintiff's alleged intrusion is also plausibly alleged as an "egregious breach of social norms," "highly offensive to a reasonable person." In re Facebook, Inc. Internet Tracking Litig., 956 F.3d at 606. To make this assessment, courts holistically consider "the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." Garcia, 825 F. Supp. 3d at 1169. "[T]he highly offensive analysis focuses on the degree to which the intrusion is unacceptable as a matter of public policy." (Id. 956 F.3d at 606) (quoting Hernandez, 47 Cal. 4th at 287, 97 Cal.Rptr.3d 274, 211 P.3d 1063). As the Ninth Circuit found in In re Facebook, Inc. Internet Tracking Litig., this is a factual question beyond the pleadings. 956

F.3d at 606. Plaintiff has plausibly pleaded "unacceptable" intrusions that could "highly offend a reasonable person," including the collection and dissemination of a physical address, VIN, and credit card information.

FCA contends that plaintiff's alleged intrusion is improperly pleaded as a violation of the California Constitution because it more closely involves the publication of private facts, which would require a separate cause of action. However, the California Constitution cause of action does not foreclose invasion of privacy claims that turn on disclosure. Indeed, various district courts have permitted claims to proceed where the defendant is alleged to have shared private information with third parties. In Tenet Healthcare, the district court found that where plaintiffs had provided private health information to defendant, and defendant's "disclosure of their information to Meta led to targeted advertisements related to their medical conditions and/or treatments on Facebook," such was "sufficient to plead the "highly offensive" element of an invasion of privacy claim." 789 F. Supp. 3d at 844. In Walgreen Co., the court similarly found that Walgreen's sharing of private information with third parties adequate to meet the "highly offensive" standard. 733 F. Supp. 3d at 893-94.

Accordingly, FCA's motion to dismiss as to plaintiff's claim under the California Constitution will be denied.

VI. Plaintiff's Unfair Competition Claim

Plaintiff's UCL claim (V) fails. (FAC at 39.) The UCL prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading

advertising." Cal. Bus. & Prof. Code § 17200. Plaintiff alleges that FCA's violations of CIPA, ECPA, and CDAFA provide the predicate acts of "unfair competition" for his UCL claim. (FAC at 39.) Under the UCL, a plaintiff must have also "'lost money or property to have standing to sue,' which requires the plaintiff to [show] 'some form of economic injury.'" Tenet Healthcare Corp., 789 F. Supp. 3d at 814 (E.D. Cal. 2025) (Coggins, J.) (quoting Kwikset Corp. v. Superior Ct., 51 Cal. 4th 310, 323 (2011)); see Cal. Bus. & Prof. Code § 17204.

Here again, plaintiff fails to contend that he experienced any direct financial loss in connection with the tracking. (FAC at 39.) Instead, he alleges that "[FCA's]business practices . . . have taken money or property in the value of the information stolen," and "[s]imilar information, as provided in focus groups, would entitle Plaintiff and the Class Members to compensation in the amount of $50 to $200." (Id.)

However, as above, this bald allegation of potential value in a focus group, absent more, is insufficient to show economic injury. Defendant's ability to generate profit from plaintiff's data does not mean plaintiff 'lost money or property' as a result." Dellasala, 2026 WL 1138358, at *10. Nor does "'theft' or 'unauthorized release of personal information' qualify as lost money or property for purposes of determining standing under the UCL." Jackson v. Loews Hotels, Inc., No. ED CV 18-827-DMG-JCX, 2019 WL 6721637, at *4 (C.D. Cal. July 24, 2019) (quoting Ruiz v. Gap, Inc., 540 F. Supp. 2d 1121, 1127 (N.D. Cal. 2008), aff'd, 380 F. App'x 689 (9th Cir. 2010)).

Because plaintiff has not shown the economic injury necessary, his UCL claim fails.

IT IS THEREFORE ORDERED that FCA's motion to dismiss (Docket No. 18) be, and the same hereby is, GRANTED as to plaintiff's state law claims under CDAFA, UCL, and CIPA § 638.51(a);

IT IS FURTHER ORDERED that FCA's motion to dismiss (Docket No. 18) be, and the same hereby is, DENIED, as to plaintiff's federal claim under the ECPA and his state law claims under CIPA § 631(a), and the California Constitution.

Plaintiff has until October 15, 2026 to file an amended complaint, if he can do so consistent with this Order. The amended complaint may include any other cause of action resulting from these allegations, including the private disclosure of private facts.

Dated: September 16, 2026

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE